1  DURIE TANGRI LLP
2  DARALYN J. DURIE (SBN 169825)
   ddurie@durietangri.com
3  MARK A. LEMLEY (SBN 155830)
   mlemley@durietangri.com
4  217 Leidesdorff Street
   San Francisco, CA  94111
5  Telephone:  (415) 362-6666
   Facsimile:  (415) 236-6300
6

7  Attorneys for Defendants
8  GENENTECH, INC. and CITY OF HOPE

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11                 WESTERN DIVISION

12  GLAXO GROUP LIMITED and        Case No. CV-10-02764 MRP (FMOx)
    GLAXOSMITHKLINE LLC,
13                                 **DEFENDANTS GENENTECH, INC.**
14                Plaintiffs,      **AND CITY OF HOPE'S**
                                   **MEMORANDUM IN SUPPORT OF**
15        v.                       **MOTION TO DISQUALIFY COUNSEL**
                                   **FOR PLAINTIFFS**
16  GENENTECH, INC., and CITY OF
    HOPE,                          Date:       June 8, 2010
17                                 Time:       1:30 p.m.
                 Defendants.       Judge:      Hon. Mariana R. Pfaelzer
18                                 Ctrm:       12

19  GENENTECH, INC., and CITY OF
    HOPE,
20
21                Counter-Plaintiffs,
22        v.
23  GLAXO GROUP LIMITED and
24  GLAXOSMITHKLINE LLC,
25                Counter-
26  Defendants.
27
28

# TABLE OF CONTENTS

PAGE NO.

STATEMENT OF RELIEF REQUESTED ............................................................. 1

SUMMARY OF ARGUMENT ............................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 2

I.   STATEMENT OF FACTS ............................................................................ 2

    A. The Patent and Products At Issue ........................................................ 2

    B. The *Chiron* Litigation ......................................................................... 3

    C. The Role of *Chiron* In the *Centocor* Case ....................................... 6

    D. Howrey's Representation of GSK and Its Refusal To Withdraw ......... 6

II.  HOWREY MUST BE DISQUALIFIED BECAUSE MR. BUNSOW'S PRIOR REPRESENTATION OF GENENTECH IS SUBSTANTIALLY RELATED TO THIS CASE AND BECAUSE HIS FIRM HERE ATTACKS HIS PREVIOUS CLAIMS ON BEHALF OF GENENTECH ................................................. 7

    A. The *Chiron* Litigation Is Substantially Related To This Case ................ 8

    B. Howrey Must Be Disqualified To Prevent Mr. Bunsow's Firm From Attacking His  Prior Work For Genentech ............................................... 12

    C. Mr. Bunsow's Conflict Compels Disqualification of the Howrey Firm ............... 13

III. CONCLUSION ........................................................................................... 16

i

DEFENDANTS GENENTECH, INC. AND CITY OF HOPE'S MEMO ISO MOTION TO
DISQUALIFY COUNSEL FOR PLAINTIFFS / Case No. CV-10-02764 MRP (FMOx)

**TABLE OF AUTHORITIES**

PAGE NO.

**Cases**

*Apeldyn Corp. v. Samsung Electronics Co., Ltd.,*
  No. 08-568-SLR, 2009 WL 3149603 (D. Del. Sept. 30, 2009) ........................... 11

*Attorney Grievance Comm'n of Maryland v. Siskind,*
  401 Md. 41, 930 A.2d 328 (2007) ................................................................. 12

*Chiron Corp. v. Genentech, Inc,,*
  363 F.3d 1247 (Fed. Cir. 2004) ........................................................... 4, 5, 7

*City and County of San Francisco v. Cobra Solutions, Inc.,*
  38 Cal. 4th 839, 43 Cal. Rptr. 3d 771 (2006) ............................ 7, 11, 12, 14

*Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.,*
  809 F. Supp. 1383 (N.D. Cal. 1992) ............................................................ 10

*Farris v. Fireman's Fund Ins. Co.,*
  119 Cal. App. 4th 671, 14 Cal. Rptr. 3d 618 (2004) ...................................... 8

*Flatt v. Superior Court (Daniel),*
  9 Cal. 4th 275, 36 Cal. Rptr. 2d 537 (1994) ...................................... 7-8, 12, 13

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH,*
  No. C 08-04909 SI, 2010 WL 1136478 (N.D. Cal. Mar. 20, 2010) ...... 10, 12-13

*Global Van Lines, Inc. v. Superior Court (V.I.P. Movers, Inc.),*
  144 Cal. App. 3d 483, 192 Cal. Rptr. 609 (1983) ............................... 7, 9, 12

*Hitachi, Ltd. v. Tatung Co.,*
  419 F. Supp. 2d 1158 (2006) ......................................................... 10, 13, 14, 15

*In re Complex Asbestos Litig.,*
  232 Cal. App. 3d 572 (1991) ...................................................................... 15

*Jessen v. Hartford Casualty Ins. Co.,*
  111 Cal. App. 4th 698, 3 Cal. Rptr. 3d 877 (1999) .............................. 8, 9, 11

*Kirk v. First Am. Title Ins. Co.,*
    No. B218956, 2010 WL 1346303 (Cal. Ct. App Apr. 7, 2010).............................13-14, 15

*Knight v. Ferguson,*
    149 Cal. App. 4th 1207, 57 Cal. Rptr. 3d 823 (2007)............................ 8, 11, 12-13, 15-16

*Koch v. Koch Indus.,*
    798 F. Supp. 1525 (D. Kansas 1992) ................................................................................ 13

*Largo Concrete, Inc. v. Liberty Mut. Fire Ins. Co.,*
    No. C 07-04651 CRB, 2008 WL 53128 (N.D. Cal. Jan. 2, 2008) ..................................... 12

*Openwave Sys, Inc. v. 724 Solutions, Inc.,*
    No. C 09-3511 RS (Apr. 22, 2010) ...........................................................................10-11, 14

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.,*
    20 Cal.4th 1135, 86 Cal. Rptr. 2d 816 (1999)................................................................... 13

*Thorner v. Sony Computer Entm't Am., Inc.,*
    No. 09-1894 (GEB), 2009 WL 4041624 (D.N.J. Nov. 20, 2009)..................................... 11

*Trone v. Smith,*
    621 F.2d 994 (9th Cir. 1980)............................................................................................... 8

**Rules**

California Rule of Professional Conduct 3-310 .........................................................................7

Central District Local Rule 83............................................................................................................7

DEFENDANTS GENENTECH, INC. AND CITY OF HOPE'S MEMO ISO MOTION TO
DISQUALIFY COUNSEL FOR PLAINTIFFS / Case No. CV-10-02764 MRP (FMOx)

## STATEMENT OF RELIEF REQUESTED

An order (i) barring the Howrey firm from further representation of Plaintiffs in this matter; and (ii) forbidding the Howrey firm or GSK from providing Howrey's work product to future counsel for GSK.

## SUMMARY OF ARGUMENT

Genentech moves to disqualify the Howrey firm because a partner in that firm, Henry Bunsow, tried a case for Genentech that is substantially related to this case. In this case, Howrey alleges that a Genentech patent (the "Cabilly II patent") is invalid because its specification fails to describe and enable the production of certain types of genetically engineered antibodies, including chimeric antibodies. (Compl. ¶55.) Mr. Bunsow previously took the opposite position on Genentech's behalf.

In the prior case, Chiron Corporation sued Genentech for patent infringement.[1] Genentech showed at trial that Chiron's patent was invalid because it failed to describe and enable the production of chimeric antibodies. Genentech contrasted Chiron's patent with the Cabilly specification, which Genentech showed did describe and enable such production. The district court cited Cabilly I in an order denying Chiron's motion for summary judgment on enablement, and Cabilly I was a trial exhibit and a subject of expert testimony at trial. Mr. Bunsow was the senior attorney on the *Chiron* case for most of its life and was part of the three-person trial team that proved Genentech's defense. He is now the managing partner of the Howrey office that proposes to argue the other side of that issue.

This conflict is not theoretical. Centocor, for example, has demanded that Genentech produce the relevant expert reports submitted in *Chiron* because they are relevant to the issues presented by Centocor's claims, which are echoed in GSK's complaint. Genentech has complied with that request.

---

[1] *Chiron Corp. v. Genentech, Inc.*, Civ. S-00-1252 (E.D. Cal. filed June 7, 2000).

DEFENDANTS GENENTECH, INC. AND CITY OF HOPE'S MEMO ISO MOTION TO
DISQUALIFY COUNSEL FOR PLAINTIFFS / Case No. CV-10-02764 MRP (FMOx)

The Genentech product at issue in *Chiron* is also central to this case. Herceptin is a Genentech drug for the treatment of breast cancer, among other diseases. It embodies the Cabilly invention, and in this case Genentech will rely on the success of Herceptin to prove the invention's non-obviousness. Herceptin was also the accused product in *Chiron*, in which Mr. Bunsow presented trial testimony from Axel Ullrich, a principal Herceptin researcher, and defended the deposition of Mark Sliwkowski, a Herceptin product manager. Mr. Bunsow also defended the deposition of Sean Johnston, Genentech's current General Counsel; and Wendy Lee, a patent agent who prosecuted the patent at issue here. All three are being deposed in the *Centocor* case and GSK has identified Ms. Lee as an important witness in this case.

There is a substantial relationship between this case and Mr. Bunsow's previous representation of Genentech. Howrey's attack on Mr. Bunsow's prior work also violates the duty of loyalty Genentech is owed by its former counsel. These facts require the disqualification of Mr. Bunsow and his firm.

<b><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></b>

## I.   STATEMENT OF FACTS

### A.   The Patent and Products At Issue

In 1983, Shmuel Cabilly and his co-inventors from Genentech and the City of Hope were the first to make genetically engineered monoclonal antibodies. Genentech and City of Hope received two related patents on this invention. The patent application that gave rise to both was filed in April 1983. The first patent issued as U.S. Patent 4,816,567 ("Cabilly I"). The second patent issued as U.S. Patent 6,331,415 ("Cabilly II"), and is the subject of this case. Cabilly II issued as a continuation of Cabilly I, and the two patents share the same specification.

Today, many successful cancer therapeutics are genetically engineered "designer" antibodies. One such product is Genentech's Herceptin, which targets her-2, a protein

found in some breast (and other) tumors.  (Decl. of Daralyn J. Durie in Supp. of Defs' Mot. to Disqualify Counsel for Pls. submitted herewith ("Durie Decl. Ex. R".)  Another is Arzerra, the GSK product at issue here. (Compl. ¶2.)  And a third is Rituxan, a Genentech product with which Arzerra competes. (Compl. ¶36.)

### B.    The *Chiron* Litigation

The *Chiron* case involved U.S. Patent 6,054,561, which was a continuation of an application filed in February 1984, with subsequent applications filed in 1985 and 1986. Chiron's '561 patent claimed methods of producing monoclonal antibodies that could target breast cancer antigens.  Chiron's '561 patent cited Cabilly I as prior art.  (Decl. of Aaron M. Nathan in Supp. of Defs' Mot. to Disqualify Counsel for Pls. submitted herewith ("Nathan Decl.") Ex. N at 000272 (patent at 2:65).)

In June of 2000, Chiron sued Genentech, claiming Genentech's Herceptin product infringed Chiron's patent.  Mr. Bunsow was then at the Keker firm.  He pitched the case to Genentech and was the senior lawyer on the case until shortly before trial.  (Durie Decl. ¶ 3.)  Mr. Bunsow was responsible for shaping Genentech's defense strategy.

When *Chiron* filed its suit, Genentech was litigating a civil action under 35 U.S.C. §146 to obtain relief from an adverse decision from the Patent and Trademark Office regarding Cabilly II (the "Section 146 action").  The Section 146 action settled and Cabilly II issued in March 2001, while *Chiron* was pending.  (Compl. ¶16.)  For obvious reasons, it was critical that nothing in Genentech's *Chiron* defense strategy impair its ability to enforce Cabilly II down the road.

The scope of discovery in *Chiron* was broad.  Mr. Bunsow defended the depositions of Sean Johnston, Genentech's current General Counsel, and Wendy Lee, who was familiar with Herceptin and who also prosecuted the Cabilly II patent.  (Nathan Decl. Exs. C-D.) Both Dr. Johnston (who was examined as a 30(b)(6) witness regarding Genentech's knowledge as a whole) and Ms. Lee were examined extensively on Herceptin.  (Nathan

1  Decl. Ex. C at 000074-79 (tr. pp. 53:13-59:4); 000080-81 (tr. pp. 62:12-63:12); 000082-84
2  (tr. pp. 91:4-92:9); 000086 (tr. pp. 149:22-150:10); 000087-88 (tr. pp. 157:13-158:9);
3  000089-90 (tr. pp. 175:8-19); Ex. D at 000101 (tr. pp. 125:10-20); 000103-04 (tr. pp.
4  127:22-129:4); 000106 (tr. pp. 156:24-157:14); 000107-08 (tr. pp. 161:10-162:4); 000109-
5  10 (tr. pp. 174:2-175:8); 000112 (tr. pp. 182:8-183:9); 000114-17 (tr. pp. 210:15-213:24).)
6  Dr. Johnston also was examined on the adequacy of Chiron's disclosure.  (Nathan Decl.
7  Ex. C at 000091-93 (tr. pp. 187:21-189:2); 000094-95 (tr. pp. 190:19-191:9).)  Mr. Bunsow
8  also defended the deposition of Mark Sliwkowski, a Genentech scientist and member of
9  the core team that managed the development of Herceptin (Nathan Decl. Ex. E at 000122-
10  23 (tr. pp. 11:21-13:18).)

11      Dr. Sliwkowski, Dr. Johnston and Ms. Lee have been or will be deposed in the
12  *Centocor* litigation.  (Durie Decl. ¶¶ 4-5.)  Indeed, in opposing Genentech and City of
13  Hope's motion to transfer this action to the Central District of California, GSK argued that
14  Ms. Lee is expected to be an important witness in this case.  (GSK's Opp'n to Defs.' Mot.
15  to Transfer, 5:6-15.)  Dr. Sliwkowski will be deposed as a corporate representative in the
16  *Centocor* litigation pending in this district.  (Durie Decl. ¶ 5.)

17      The district court relied in part on Cabilly's work in denying Chiron's summary
18  judgment motion on enablement.  An invention is enabled if a person of ordinary skill may
19  practice it without undue experimentation.  *Chiron Corp. v. Genentech, Inc,*, 363 F.3d
20  1247, 1256 (Fed. Cir. 2004) (internal citations omitted).  An application need not enable
21  techniques developed only after the application was filed, however, *Chiron*, 363 F.3d at
22  1254, so to prove its enablement defense Genentech had to show that chimeric antibodies
23  were known in the relevant art before Chiron's filing date.  To meet this requirement,
24  Genentech pointed to Cabilly's work.  In denying Chiron's motion, the district court noted
25  that the Chiron application cited Cabilly I; the court found Cabilly "describes a method for
26  making a chimeric antibody."  (Nathan Decl. F at 000138 (Order p. 13).)

27

28

DEFENDANTS GENENTECH, INC. AND CITY OF HOPE'S MEMO ISO MOTION TO
DISQUALIFY COUNSEL FOR PLAINTIFFS / Case No. CV-10-02764 MRP (FMOx)

1    The case proceeded to trial on the question whether the applications filed in the early
2    and mid 1980s adequately described and enabled the production of recombinantly
3    produced antibodies, including chimeric antibodies. (Nathan Decl. Ex. H; Ex. F at
4    000138-39 (Order pp. 13-14); Ex. G at 000178-79 (pp. 5-6)); *Chiron*, 363 F.3d at 1253-56.
5    Cabilly continued to play an important role at trial. (*Chiron*, 363 F.3d at 1253-57.  None of
6    Chiron's applications specifically discussed any antibodies other than mouse antibodies.
7    *Id.*  Dr. Debbie French, one of Genentech's experts, testified at trial that the Cabilly patent
8    application disclosed and taught how to make various types of recombinant antibodies,
9    including chimeric antibodies. (Nathan Decl. Exs. J at 000198-200 (tr. pp. 383, 397-401)
10   and G at 000178-80 (pp. 5-7).  This testimony was offered to show that Cabilly did
11   describe and enable the making of different types of recombinant antibodies, and to
12   contrast the (sufficient) Cabilly disclosure with the (insufficient) disclosure in the Chiron
13   patent. (*Id.*)

14       Mr. Bunsow presented testimony from Mr. Gerald Bjorge, another of Genentech's
15   experts, that the Chiron applications did not describe or enable recombinant antibodies;
16   Mr. Bunsow argued that point to the jury. (Nathan Decl. Ex. I at 000194 (tr. pp. 188-90),
17   000 195 (tr. pp. 197-98).)  Mr. Bunsow also presented testimony from Axel Ullrich, whose
18   work led to Herceptin and who testified regarding that work.  Mr. Bunsow told the court
19   that his questions to Mr. Ullrich were directly relevant to enablement. (Nathan Decl. Ex. K
20   at 000206 (tr. 444).)

21       The jury ruled for Genentech on enablement and written description grounds, and
22   the Federal Circuit affirmed the result. *Chiron,* 363 F.3d at 1261.  *Chiron* was an
23   important case for Genentech and for Mr. Bunsow.  Howrey highlighted the case when it
24   announced that Mr. Bunsow had joined the firm, which he did shortly after the *Chiron*
25   trial, and *Chiron* remains part of Mr. Bunsow's website profile of significant matters.

26

27

28   DEFENDANTS GENENTECH, INC. AND CITY OF HOPE'S MEMO ISO MOTION TO
     DISQUALIFY COUNSEL FOR PLAINTIFFS / Case No. CV-10-02764 MRP (FMOx)

### C.   The Role of *Chiron* In the *Centocor* Case

Like GSK here, Centocor contends that the Cabilly specification does not adequately describe and enable the full range of recombinant antibodies. Centocor requested production of the expert reports submitted in the *Chiron* litigation, including the reports of Debbie French, precisely on the theory that the issues in the two cases are so closely related that expert reports in one case are germane to the other. Rather than press an objection to the relevance of this request, Genentech has produced many of those reports, including the French report. (Durie Decl. ¶ 5.)

### D.   Howrey's Representation of GSK and Its Refusal To Withdraw

GSK originally employed White & Case to sue Genentech in the Southern District of Florida. GSK then dismissed the Florida action and White & Case; it sought out Mr. Bunsow's firm, Howrey, to file this case. Shortly after Howrey appeared, counsel for Genentech wrote Rusty Day, GSK's lead litigation counsel, informing him of Howrey's conflict. (Durie Decl. ¶ 6, Ex. A.) Howrey responded by denying any conflict. (Durie Decl. Ex. C. (*See also* Ex. B, Durie March 23, 2010 email to Day; Ex. D, Day March 25, 2010 email to Durie). On April 2, 2010, counsel for Genentech wrote to Howrey again, providing additional detail regarding this conflict. (Durie Decl., Exs. E, F, G.) On April 7, Howrey responded again that there was no conflict. (Durie Decl., Ex H.)

In a final effort to avoid litigating this issue, and to avoid any risk of misunderstanding, on April 12, 2010, Genentech's counsel shared a draft of this brief with Howrey, followed on April 15 by draft declarations and exhibits, before filing them. (Durie Decl., Exs. I, P.) Genentech agreed to allow GSK to review the papers, and agreed to Howrey's request for an additional week to study the papers. (Durie Decl., Exs. J, K, L, M, N, O.) On April 22, Howrey wrote a letter to Genentech's counsel denying that *Chiron* is substantially related to this case, averring that Mr. Bunsow had never spoken to anyone at Howrey regarding *Chiron* until Genentech raised this issue, and refusing to withdraw from the case. (Durie Decl., Ex. Q.)

## II. HOWREY MUST BE DISQUALIFIED BECAUSE MR. BUNSOW'S PRIOR REPRESENTATION OF GENENTECH IS SUBSTANTIALLY RELATED TO THIS CASE AND BECAUSE HIS FIRM HERE ATTACKS HIS PREVIOUS CLAIMS ON BEHALF OF GENENTECH

Central District Local Rule 83-3.1.2 provides that "the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto" govern conduct before this Court. California Rule of Professional Conduct 3-310(e) provides that absent a waiver a lawyer may not "accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

Case law extends this rule to forbid a lawyer from acting adversely to a former client in a matter substantially related to the initial representation. Former clients such as Genentech "have an overwhelming interest in preserving the confidentiality of information they imparted to counsel during a prior representation. That interest is imperiled when counsel later undertakes representation of an adversary in a matter substantially related to counsels' prior representation of the former client." *City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 851, 43 Cal. Rptr. 3d 771, 780 (2006).

For this reason, Genentech need not show that in trying the *Chiron* case Mr. Bunsow actually acquired confidential information relevant to this case. *Global Van Lines, Inc. v. Superior Court (V.I.P. Movers, Inc.)*, 144 Cal. App. 3d 483, 489, 192 Cal. Rptr. 609, 612 (1983). The question is whether "by virtue of the nature of the former representation or the relationship of the attorney to his former client confidential information material to the current dispute would normally have been imparted to the attorney or to subordinates for whose legal work he was responsible . . . ." *Id.* "Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first

7

1  representation (relevant, by definition, to the second representation) is *presumed* and

2  disqualification of the attorney's representation of the second client is mandatory." *Flatt v.*

3  *Superior Court (Daniel)*, 9 Cal. 4th 275, 283, 36 Cal. Rptr. 2d 537, 541 (1994) (emphasis

4  in original).

5  **A.    The *Chiron* Litigation Is Substantially Related To This Case**

6  Matters are substantially related if their subjects may be linked in a rational manner.

7  *Jessen v. Hartford Casualty Ins. Co.,* 111 Cal. App. 4th 698, 711, 3 Cal. Rptr. 3d 877, 886

8  (1999); *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980) ("Substantiality is present if the

9  factual contexts of the two representations are similar or related."). The subject of each

10 representation is not limited to precise facts and claims at issue but extends to "information

11 material to the evaluation, prosecution, settlement or accomplishment of" the goals in each

12 representation. *Jessen,* 111 Cal. App. 4th at 712-13. Thus, "[w]here an attorney acquires

13 knowledge about the former client's 'attitudes,' practices, business customs, 'litigation

14 philosophy,' strengths, weaknesses or strategy, disqualification may be required for that

15 reason alone." *Knight v. Ferguson*, 149 Cal. App. 4th 1207, 1215, 57 Cal. Rptr. 3d 823,

16 828-29 (2007) (citation omitted).[2]

17 This case is substantially related to *Chiron* for two reasons. First, each case raises

18 written description and enablement issues to which the Cabilly patents are material. The

19 patent at issue here claims priority to the same application that led to the issuance of

20 Cabilly I, which (i) the *Chiron* court cited as a basis for denying Chiron's summary

21 judgment motion on enablement; (ii) was admitted in evidence at trial in *Chiron*; and (iii)

22

23 [2] Genentech does not assert a general "playbook" theory of disqualification. Rather, Mr.
   Bunsow's prior work for Genentech necessarily involved him in strategic choices relevant
24 to defenses in *Chiron*; those defenses and thus those choices are relevant here. The
   proposition stated in *Knight* compels disqualification in such circumstances, as even cases
25 disavowing a playbook theory recognize. *E.g., Farris v. Fireman's Fund Ins. Co.*, 119 Cal.
   App. 4th 671, 688, 14 Cal. Rptr. 3d 618 629-30 (2004) (disqualifying attorney who helped
26 formulate insurer's policies which he later attacked on behalf of insured).

27

28
DEFENDANTS GENENTECH, INC. AND CITY OF HOPE'S MEMO ISO MOTION TO
DISQUALIFY COUNSEL FOR PLAINTIFFS / Case No. CV-10-02764 MRP (FMOx)

1   was a subject of testimony from Dr. French, Genentech's expert on enablement issues, (iv)

2   whose expert report was sought by counsel for Centocor to support its challenge to the

3   patent at issue here on the same grounds GSK asserts here.

4        Second, Herceptin was material to Genentech's defenses in *Chiron* and is material to

5   its defense of Cabilly II here. Herceptin was the accused product in *Chiron* and Genentech

6   will use it to rebut GSK's arguments regarding the alleged obviousness of the Cabilly II

7   invention in this case. At trial in *Chiron*, Mr. Bunsow presented testimony from Dr.

8   Ullrich, whose work led to the creation of Herceptin. Mr. Bunsow also defended the

9   depositions of Dr. Sliwkowski and Ms. Lee. In its papers opposing the transfer of this case

10   from the Northern District, GSK identified Ms. Lee as an important witness in this case.

11   (GSK's Opp'n to Defs.' Mot. to Transfer, D.I. 14, 5:6-15.)

12        As the senior attorney on the case for most of the case, and one of the three members

13   of the trial team, Mr. Bunsow is presumed to have acquired information relevant to

14   Cabilly, including the very broad range of facts relevant to enablement of persons of

15   ordinary skill in the art, the more particular facts concerning Cabilly's enablement of such

16   persons, which GSK attacks here, and evidence regarding Herceptin and its relationship to

17   these other facts. *Global Van Lines,* 144 Cal. App. 3d at 489. No competent lawyer

18   charged with Mr. Bunsow's responsibilities could have avoided acquiring extensive

19   knowledge on all these topics. Howrey's letter denying a conflict, written after the firm

20   had two weeks to study a draft version of these papers, does not deny that Mr. Bunsow

21   acquired such information.

22        Mr. Bunsow also is presumed to have acquired information regarding Genentech's

23   desire to ensure that its *Chiron* defense strategy did not conflict with its positions in the

24   Section 146 action and did not impair its ability to enforce Cabilly II. This case is

25   therefore at the very least a prime example of one in which "the attorney may acquire

26   confidential information about the client or the client's affairs which may not be directly

27

28
DEFENDANTS GENENTECH, INC. AND CITY OF HOPE'S MEMO ISO MOTION TO
DISQUALIFY COUNSEL FOR PLAINTIFFS / Case No. CV-10-02764 MRP (FMOx)

1   related to the transaction or lawsuit at hand," but which nevertheless may compel

2   disqualification. *Jessen,* 111 Cal. App. 4th at 712. Again, the Howrey firm has not denied

3   that Mr. Bunsow was responsible for shaping Genentech's defense strategy nor does it

4   deny that the strategy involved consideration of written description and enablement attacks

5   on a claim dating to the early 1980s and directed to monoclonal antibodies.

6        Centocor's discovery demand for material from the *Chiron* case to support its

7   attacks on Cabilly II confirms that *Chiron* is substantially related to this case. That

8   demand shows that a well-represented party whose counsel is free from any conflict

9   considers the *Chiron* litigation to have raised issues and generated evidence relevant to

10  attacks on the patent at issue here. *Cf. Genentech, Inc. v. Sanofi-Aventis Deutschland*

11  *GMBH,* No. C 08-04909 SI, 2010 WL 1136478, at *9 (N.D. Cal. Mar. 20, 2010) (ordering

12  disqualification in part because discovery sought by plaintiff would require Genentech to

13  produce affidavits Genentech's former counsel submitted in interference proceeding). Nor

14  is there any reason to believe GSK's enablement and written description arguments,

15  (Compl. ¶¶26, 55), will be any different from Centocor's.

16       This case is thus analogous to *Hitachi, Ltd. v. Tatung Co.*, where the court

17  disqualified a firm that represented an infringement defendant and which employed an

18  associate who previously had represented the plaintiff with respect to the patents in suit.

19  Although the patent in suit here is Cabilly II, not Chiron's, as in *Hitachi* the defenses GSK

20  will assert against Genentech here are substantively similar to the defenses Genentech

21  asserted against Chiron. 419 F. Supp. 2d 1158, 1159 (2006). *See also Sanofi,* 2010 WL

22  1136478, at *10 (disqualifying counsel who represented Genentech in PTO interference

23  proceeding raising subjects relevant to later infringement suit); *Elan Transdermal Ltd. v.*

24  *Cygnus Therapeutic Sys.,* 809 F. Supp. 1383 (N.D. Cal. 1992) (disqualifying patentee's

25  counsel where they had provided advice to infringement defendant on claims similar to

26  those they then asserted against defendant). Indeed, courts applying the substantial

27

28
DEFENDANTS GENENTECH, INC. AND CITY OF HOPE'S MEMO ISO MOTION TO
DISQUALIFY COUNSEL FOR PLAINTIFFS / Case No. CV-10-02764 MRP (FMOx)

relationship test have disqualified firms based on similarities far weaker than those present here. *See Openwave Sys, Inc. v. 724 Solutions, Inc.,* No. C 09-3511 RS (Apr. 22, 2010) (Nathan Decl. Ex. M at 000245-55) (disqualifying firm defending infringement suit based on patent that cited as prior art U.S. counterpart of Australian application the firm had opposed nine years earlier); *Thorner v. Sony Computer Entm't Am., Inc.,* No. 09-1894 (GEB), 2009 WL 4041624, at *8 (D.N.J. Nov. 20, 2009) (ordering disqualification where defendant's litigation counsel previously worked on game console technology related to game controller patents in suit); *Apeldyn Corp. v. Samsung Electronics Co., Ltd.*, No. 08-568-SLR, 2009 WL 3149603, at *2-4 (D. Del. Sept. 30, 2009) (granting motion to disqualify defendants' counsel where associate previously worked on memory technology used as part of structure implementing means-plus-function claims).

Howrey's correspondence argues *Chiron* is not substantially related to this case because *Chiron* involved the validity of Chiron's patent, not Cabilly II, and because Herceptin is not an accused product in this case. (Durie Decl. Ex. Q at 1.) But the substantial relationship test encompasses "more than the strict facts, claims, and issues involved in a particular action." *Jessen*, 111 Cal. App. 4th at 711. A substantial relationship exists where information gained in a prior representation could be useful in a later representation. *Id.* at 713. Howrey has not denied that Herceptin is relevant to Genentech's arguments in this case, nor has it denied that Mr. Bunsow gained extensive knowledge of Herceptin in *Chiron*, knowledge that would be useful to GSK in this case.

Similarly, Howrey does not deny that Cabilly II shares a specification with Cabilly I, nor that the common Cabilly specification was relevant to *Chiron*. The firm attempts to minimize the importance of Cabilly by saying Dr. French's testimony on Cabilly was only a "passing reference." (Durie Decl. Ex. Q at 1.) This claim ignores the district court's citation of Cabilly as one basis for denying Chiron's summary judgment motion because Cabilly "describes a method for making a chimeric antibody." (Nathan Decl. F at 000138

DEFENDANTS GENENTECH, INC. AND CITY OF HOPE'S MEMO ISO MOTION TO
DISQUALIFY COUNSEL FOR PLAINTIFFS / Case No. CV-10-02764 MRP (FMOx)

(Order p. 13.) The claim is mistaken in any event, because the substantial relationship test is not an exercise in counting lines of testimony. A lawyer cannot escape disqualification by arguing he spent only an hour or two on the conflicting matter. *Cf. Cobra Solutions*, 38 Cal. 4th at 845 (affirming disqualification where key client contact was only .4 hours); *Largo Concrete, Inc. v. Liberty Mut. Fire Ins. Co.*, No. C 07-04651 CRB, 2008 WL 53128, at *1 (N.D. Cal. Jan. 2, 2008) (disqualifying firm where one attorney previously performed 9.8 hours of work for opposing party). The same logic applies even more strongly here. Witnesses are prepared on the subject of their testimony and that preparation requires lawyers to learn the facts. The law presumes Mr. Bunsow learned the knowledge necessary to present such testimony, *Global Van Lines*, 144 Cal. App. 3d at 489, and Howrey does not deny that he did.

**B.   Howrey Must Be Disqualified To Prevent Mr. Bunsow's Firm From Attacking His Prior Work For Genentech**

Most subsequent conflicts cases raise only confidentiality concerns. *E.g., Flatt*, 9 Cal. 4th at 283. In some cases, however, the duty of loyalty may compel disqualification apart from any concern for confidentiality. That is true where a lawyer attacks his previous work. In *Knight*, 149 Cal. App. 4th at 829, for example, a lawyer advised three parties to a business venture and then represented two of the parties in litigation against the third when the venture turned sour. All three parties had been present when the lawyer gave his advice, so confidentiality was not a serious issue. The court nevertheless affirmed an order disqualifying the lawyer, holding that the defendant/former client "had the right to 'repose confidence' in" the lawyer "and to expect that his loyalty to her would not be compromised." *Id.* (citation omitted); *see also Attorney Grievance Comm'n of Maryland v. Siskind*, 401 Md. 41, 62-63, 930 A.2d 328, 340-41 (2007) (applying *Knight* to case involving Maryland equivalent of ABA Model Rule 1.9; "there is more to the attorney-client relationship than the mere words exchanged between client and counsel. There is a more fundamental aspect of the relationship that is the sense of trust and confidence a

client invests in his or her chosen legal counselor and representative."); *Koch v. Koch Indus.,* 798 F. Supp. 1525, 1534 (D. Kansas 1992) (subsequent conflicts rule "extends beyond the preservation of confidential information.  It also maintains public confidence in the system and, more importantly, safeguards a client's 'right to expect the loyalty of his attorney....'") (internal citation omitted).

Similarly, Genentech is entitled to the quiet enjoyment of all the duties Mr. Bunsow owes it.  Those duties create an obligation of loyalty with respect to the advice he gave and the strategies he recommended and implemented as well as with respect to the confidences he undertook to maintain.  It betrays those obligations for Mr. Bunsow's firm, indeed the office for which he is managing partner, to attack his work.

### C.    Mr. Bunsow's Conflict Compels Disqualification of the Howrey Firm

The preceding discussion shows Mr. Bunsow could not represent GSK in this case. As a matter of law, his conflict extends to his firm, which must be disqualified as well. The California Supreme Court stated this rule in *Flatt,* 9 Cal.4th at 283, and has twice affirmed disqualification of firms or government offices based on the conflicts of individual attorneys.  *Cobra Solutions,* 38 Cal.4th at 853-53; *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal.4th 1135, 1153-54, 86 Cal. Rptr. 2d 816, 829 (1999).  This "vicarious disqualification rule recognizes the everyday reality that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information." *Id.*  Federal district courts apply this rule as well, *e.g., Sanofi,* 2010 1136478, at *10; *Hitachi,* 419 F. Supp. 2d at 1161, and the California State Bar Board of Governors recently declined to propose even a rule that would allow screening of attorneys who, unlike Mr. Bunsow, had only peripheral involvement in a prior matter.  (Nathan Dec. Ex. L at 000222 (p. 11).)

The Second District Court of Appeal recently affirmed the presumption that an attorney's information (and thus conflicts) are imputed to his firm but held the presumption

may be rebutted by screening in some cases. *Kirk v. First Am. Title Ins. Co.*, No. B218956, 2010 WL 1346303 (Cal. Ct. App Apr. 7, 2010). No other California case supports this result, however, and the only federal case decided since *Kirk* of which we are aware ordered disqualification notwithstanding the use of an ethical screen. *Openwave, supra.*

The facts of *Kirk* are in any event materially different from this case. The lawyer in *Kirk* had been tainted in an initial interview that, although it involved discussions material to the case in which disqualification was sought, lasted less than half an hour. 2010 WL 134303, at *2. The lawyer in *Kirk* did not accept the proposed work. Unlike Mr. Bunsow, he did not lead a team through a lengthy case tried to verdict. The conflict in *Kirk* arose from lawyers joining other departments in distant offices of a large firm (Sonnenschein), not from lawyers doing the same kind of work in offices in the same market, which is the case here. *Cf. Id.* at *3, 13; *18 (emphasizing the importance of this point). The tainted lawyer in *Kirk* did not supervise others working against his former client; Mr. Bunsow is the managing partner of the Howrey office where GSK's lawyers work. *Cf. Cobra Solutions*, 38 Cal. 4th at 854 (rejecting screen of City Attorney and noting "[t]he power to review, hire, and fire is a potent one."). In *Kirk*, the attorneys against whom the disqualification order was entered had represented their client in 80 similar cases, had been working on the case in question for years, had defended hundreds of depositions and reviewed hundreds of thousands of documents, and their client had invested $5 million in that representation that would be effectively lost if disqualification were ordered. 2010 WL 1346403, *1-2. Howrey was only recently retained by GSK to replace its prior attorneys.

*Kirk* thus dealt with an order disqualifying "a party's long-term counsel" because another attorney in a remote office possessed "a small amount of potentially relevant confidential information." 2010 WL 1346403, at *18. That is not the case here. Howrey is not GSK's long-term counsel in this matter, Mr. Bunsow is the managing partner of the

14

office in which the relevant lawyers work, and the amount of confidential information he possesses could in no sense be characterized as "small."  *Kirk* does not endorse screening in all cases, so even reading it to change California law would not rebut the presumption of shared confidences here.  As in *Hitachi*, the close similarity of the issues and the close proximity of the lawyers in this case compels disqualification, even to the extent that ethical screens are effective in some circumstances.  419 F. Supp. 2d at 1164-65.

Howrey has stated in correspondence that it has screened Mr. Bunsow from this case and that Mr. Bunsow "had no conversation with anyone at Howrey about his role in the *Chiron* case" until Genentech drew this conflict to the firm's attention.  (Durie Decl. Ex. Q at 2.)  Howrey's letter confirms that the firm did not screen Mr. Bunsow from this case when it began representing GSK: If Mr. Bunsow had no discussions with anyone at the firm, then there could have been no up-front screen.  Only when Genentech caught the conflict and complained did Howrey attempt to screen Mr. Bunsow, and that was too late. *Cf. Kirk*, 2010 WL1346403, at *19 (a necessary element of an effective screen is that it be timely imposed; "a firm must impose screening measures when the conflict first arises"), citing *In re Complex Asbestos Litig.*, 232 Cal. App. 3d 572, 594 (1991) (approving screening in theory for non-lawyer professionals and holding that to be effective "screening should be implemented before undertaking the challenged representation or hiring the tainted individual.  Screening must take place at the outset to prevent any confidences from being disclosed.").

Imputation most commonly safeguards confidences; here it is appropriate to enforce the duty of loyalty as well.  Mr. Bunsow's firm seeks to attack arguments he formulated and evidence he presented regarding Cabilly and the enablement issues that will be central to this case.  Genentech relied on Mr. Bunsow to explain why Cabilly described and enabled the making of different types of recombinant antibodies; the law does not require Genentech to watch his firm try to tear those arguments apart. *Cf. Knight*, 149 Cal. App.

1 | 4th at 829 ("The disqualification rule is 'to keep honest attorneys from having to choose
2 | between conflicting duties, or being tempted to reconcile conflicting interests, rather than
3 | fully pursuing their clients' rights.'") (internal citations omitted).

4 | **III.   CONCLUSION**

5 |      For the foregoing reasons, the Howrey firm should be disqualified from further
6 | work adverse to Genentech on this case.  Given the closeness of the relationship between
7 | this case and *Chiron*, and the depth of Mr. Bunsow's involvement in *Chiron*, the court
8 | should also order that Howrey sequester its work product and not transfer it to successor
9 | counsel.

10 | Dated:     April 27, 2010           DURIE TANGRI LLP

12 | By:  _____*/s/ Daralyn J. Durie*_____
            Daralyn J. Durie

13 | Attorneys for Defendants
GENENTECH, INC., and CITY OF HOPE

15 | *Of Counsel*

16 | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
KENNETH GALLO
2001 K Street, NW
Washington, DC  20006-1047
kgallo@paulweiss.com
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420

20 | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
JOHN E. NATHAN
CATHERINE NYARADY
KRIPA RAMAN
1285 Avenue of the Americas
New York, NY 10019-6064
jnathan@paulweiss.com
cnyarady@paulweiss.com
kraman@paulweiss.com
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

DEFENDANTS GENENTECH, INC. AND CITY OF HOPE'S MEMO ISO MOTION TO
DISQUALIFY COUNSEL FOR PLAINTIFFS / Case No. CV-10-02764 MRP (FMOx)

## CERTIFICATE OF SERVICE

I am a citizen of the United States and resident of the State of California. I am employed in San Francisco County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen years, and not a party to the within action. My business address is 217 Leidesdorff Street, San Francisco, CA 94111.

On April 27, 2010, I served the following documents in the manner described below:

**DEFENDANTS GENENTECH, INC. AND CITY OF HOPE'S MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFFS**

☐ (BY U.S. MAIL) I am personally and readily familiar with the business practice of Durie Tangri LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at San Francisco, California.

☐ (BY MESSENGER SERVICE) by consigning the document(s) to an authorized courier and/or process server for hand delivery on this date.

☐ (BY FACSIMILE) I am personally and readily familiar with the business practice of Durie Tangri LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

☒ (BY OVERNIGHT MAIL) I am personally and readily familiar with the business practice of Durie Tangri LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

☐ BY ELECTRONIC SERVICE: By electronically mailing a true and correct copy through Durie Tangri's electronic mail system from mafranz@durietangri.com to the email addresses set forth below.

☐ (BY PERSONAL DELIVERY) I caused such envelope to be delivered by hand to the offices of each addressee below.

17

On the following part(ies) in this action:

Lloyd R. Day, Jr.
DayL@howrey.com
Jackie N. Nakamura
NakamuraJ@howrey.com
Howrey LLP
1950 University Avenue, 4th Floor
East Palo Alto, CA 94303

I further certify that counsel of record is being served on April 27, 2010 with a copy of this document via the Court's CM/ECF system.

Robert M. Galvin, Esq.          GalvinR@howrey.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 27, 2010, at San Francisco, California.

_/s/ Margaret Ann Franz_
Margaret Ann Franz

DEFENDANTS GENENTECH, INC. AND CITY OF HOPE'S MEMO ISO MOTION TO
DISQUALIFY COUNSEL FOR PLAINTIFFS / Case No. CV-10-02764 MRP (FMOx)