DURIE TANGRI LLP
DARALYN J. DURIE (SBN 169825)
ddurie@durietangri.com
MARK A. LEMLEY (SBN 155830)
mlemley@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:  (415) 362-6666
Facsimile:  (415) 236-6300

Attorneys for Defendants and Counterclaim
Plaintiffs GENENTECH, INC. and CITY OF
HOPE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| GLAXO GROUP LIMITED and GLAXOSMITHKLINE LLC, <br><br> Plaintiffs, <br><br> v. <br><br> GENENTECH, INC. and CITY OF HOPE, <br><br> Defendants. | Case No. CV 10-02764 MRP (FMOx) <br><br> **DEFENDANTS GENENTECH, INC. AND CITY OF HOPE'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFFS** <br><br> Date:     June 8, 2010 <br> Time:    1:30 p.m. <br> Ctrm:    12 <br><br> **The Honorable Mariana R. Pfaelzer** |
| GENENTECH, INC. and CITY OF HOPE, <br><br> Defendants and Counterclaim Plaintiffs, <br><br> v. <br><br> GLAXO GROUP LIMITED and GLAXOSMITHKLINE LLC, <br><br> Plaintiffs and Counterclaim Defendants. | |

# TABLE OF CONTENTS

PAGE NO.

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 2

I.   Under The Proper Legal Standard, Because Mr. Bunsow Helped Put
     On A Defense Using Evidence Relevant To The Issues In This Case,
     He Is Presumed To Have Information Material to This Case ..................... 2

II.  Howrey Misdescribes The *Chiron* Litigation By Ignoring
     Genentech's Actual Trial Strategy, Which Mr. Bunsow Helped
     Conceive and Implement ................................................................................ 4

     A. Cabilly Was Introduced in *Chiron* As Affirmative Evidence of Proper
        Description and Enablement, Not Just As A Piece of Prior Art ............ 4

     B. Genentech's *Chiron* Trial Strategy Placed In Evidence And At Issue
        Facts That Will Be In Evidence and At Issue Here ................................. 7

III. Mr. Bunsow's Disqualification Extends to His Firm ................................... 9

IV.  Mr. Bunsow's Firm Plans To Attack His Former Work And Thus
     Violate The Loyalty Mr. Bunsow Owes Genentech .................................. 11

V.   Howrey Wrongly Accuses Genentech of Seeking Tactical Advantage .... 12

VI.  GSK Should Be Precluded From Using Howrey's Work Product............ 13

CONCLUSION............................................................................................... 14

i

# TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*City and County of San Francisco v. Cobra Solutions, Inc.,*
  38 Cal. 4th 839, 43 Cal. Rptr. 3d 771 (2006)................................ 3

*Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.,*
  809 F. Supp. 1383 (N.D. Cal. 1992) ...................................... 9

*Flatt v. Superior Court (Daniel),*
  9 Cal. 4th 275, 36 Cal. Rptr. 2d 537 (1994)................................ 2, 3

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH,*
  No. C 08-04909 SI, 2010 WL 1136478 (N.D. Cal. Mar. 20,
  2010)...........................................................................8-9

*Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH,*
  No. C 08-04909 SI (N.D. Cal. filed May 14, 2010)........................ 9

*Global Van Lines, Inc. v. Superior Court (V.I.P. Movers, Inc.),*
  144 Cal. App. 3d 483, 192 Cal. Rptr. 609 (1983) ...................... 2, 12

*In re Lee G.,*
  1 Cal. App. 4th 17, 1 Cal. Rptr. 375 (1991) ............................. 3

*Jessen v. Hartford Casualty Ins. Co.,*
  111 Cal. App. 4th 698, 3 Cal. Rptr. 3d 877 (1999)........................ 2, 8

*Kirk v. First Am. Title Ins. Co.,*
  183 Cal. App. 4th 776, --- Cal. Rptr. ---, 2010 WL 1346303
  (Cal. Ct. App. Apr. 7, 2010)................................. 9-10, 11

*Knight v. Ferguson,*
  149 Cal. App. 4th 1207, 57 Cal. Rptr. 3d 823 (2007).................. 11

*Openwave Sys, Inc. v. 724 Solutions, Inc.,*
  No. C 09-3511 RS, 2010 WL 1687825
  (N. D. Cal. Apr. 22, 2010)..................................6-7, 9

*Talecris Biotherapuetics, Inc. v. Baxter International, Inc.,*
  491 F. Supp. 2d 510 (D. Del. 2007) ...................................... 9

*Thorner v. Sony Computer Entm't Am., Inc.,*
  No. 09-1894 (GEB), 2009 WL 4041624
  (D.N.J. Nov. 20, 2009)................................................ 13

*Trone v. Smith,*
  621 F.2d 994 (9th Cir. 1980) ............................................ 2

*UMG Recordings, Inc. v. MySpace, Inc.,*
  526 F. Supp. 2d 1046 (C.D. Cal. 2007)................................... 3

*William H. Raley Co. v. Superior Court (Carroll),*
  149 Cal. App. 3d 1042, 197 Cal. Rptr. 232 (1983) ...................... 3

# INTRODUCTION

In *Chiron v. Genenetech*, Civ. S-00-1252 (E.D. Cal. filed June 7, 2000), Genentech introduced evidence that the Cabilly specification describes and enables the production of recombinant antibodies. Genentech contended in its motion that Howrey plans to contradict that position in this case. Howrey's opposition does not deny that it plans to assert on behalf of GSK precisely the opposite of what Mr. Henry Bunsow and his colleagues previously argued for Genentech. Howrey instead makes two claims, neither of which is right.

Howrey first asserts that in *Chiron* Genentech used Cabilly as no more than a piece of prior art. That assertion is belied by the testimony Howrey quotes and portions of Howrey's own brief. Moreover, it would not matter if Howrey's assertion were true. The substantial relationship test for disqualification asks not just how an exhibit is used but what it is reasonable to presume a lawyer learned while preparing to use it. Howrey errs in failing to acknowledge that Mr. Bunsow and his colleagues prepared a coordinated and coherent defense to Chiron's case and integrated Cabilly into it; they did not just drop Cabilly into the record to "speak for itself."

Howrey similarly asserts that the validity of the Cabilly I patent was not at issue in *Chiron* and that the Cabilly I patent is different from the Cabilly II patent at issue here. It is true that Chiron did not challenge Cabilly I's validity, but it does not follow that *facts* relevant to validity were absent from the trial. As a matter of trial strategy, Genentech chose not just to criticize Chiron's patent but to show the jury what proper description and enablement looked like. Genentech used the Cabilly specification as part of this showing. Mr. Bunsow was the senior patent lawyer on the case; this strategy was in significant part his strategy. It is reasonable to presume that in helping conceive and execute this strategy Mr. Bunsow obtained from Genentech confidences relevant to the evidence the strategy required. It is those confidences the substantial relationship test protects.

1

1    Moreover, Howrey's insistence that Cabilly II and Cabilly I are unrelated is
2  simply not credible.  The patents share the same specification.  That specification
3  discloses the invention claimed in Cabilly II, and the adequacy of that specification
4  is at issue in this case.  The *Chiron* trial team studied the Cabilly specification, and
5  what it does and does not disclose, so they could use it at trial.  In doing so they
6  learned information that would be useful to GSK in this case.

7    Finally, Howrey asserts that its lead counsel, Rusty Day, is indispensible to
8  GSK.  With genuine respect for Mr. Day, no lawyer is indispensible and he was
9  not even GSK's first choice.  GSK hired lawyers from White & Case in New York
10  (which to our knowledge has no conflict) when it wanted to try this case in Florida.
11  When GSK dismissed the Florida case and refiled in the Northern District of
12  California, it hired Howrey.  There is no reason to believe GSK will be deprived of
13  competent counsel if it has to find a firm other than Howrey to represent it in Los
14  Angeles, where lawyers from the east coast are not strangers to this Court.

15                                   **ARGUMENT**

16  **I.    Under The Proper Legal Standard, Because Mr. Bunsow Helped Put
        On A Defense Using Evidence Relevant To The Issues In This Case, He
17       Is Presumed To Have Information Material to This Case**

18    Howrey does not dispute the basic rules governing this motion: Genentech
19  need not prove that Mr. Bunsow acquired in *Chiron* confidential information
20  material to this case.  *Global Van Lines, Inc. v. Superior Court (V.I.P. Movers,*
21  *Inc.)*, 144 Cal. App. 3d 483, 489, 192 Cal. Rptr. 609, 612 (1983).  Possession of
22  such information is *presumed* where matters are substantially related, and
23  disqualification of both the conflicted lawyer and his firm is "mandatory."  *Flatt v.*
24  *Superior Court (Daniel)*, 9 Cal. 4th 275, 283, 36 Cal. Rptr. 2d 537, 541 (1994).
25  Nor does Howrey seriously dispute that matters are substantially related if their
26  subjects may be linked in a rational manner.  *Jessen v. Hartford Casualty Ins. Co.,*
27  111 Cal. App. 4th 698, 711, 3 Cal. Rptr. 3d 877, 886 (1999); *Trone v. Smith*, 621
28  F.2d 994, 998 (9th Cir. 1980).

1   Howrey instead reaches back past three California Supreme Court cases to

2   urge the court to adopt a "delicate" balancing test drawn from a 1983 case

3   involving a conflict stemming not from representation but from a lawyer's capacity

4   as director of a bank that served as trustee of a trust that owned the stock of a

5   corporation that was adverse to a company represented by the lawyer's firm.

6   *William H. Raley Co. v. Superior Court (Carroll)*, 149 Cal. App. 3d 1042, 1048,

7   197 Cal. Rptr. 232, 236-37 (1983).  (Opp'n at 8.)[1]

8   This argument fails for two reasons.  First, even on such diffuse facts the

9   court of appeals held the trial court abused its discretion in not disqualifying the

10   firm as a whole.  More fundamentally, Howrey's suggested balancing approach is

11   at odds with subsequent Supreme Court precedent.  In *City and County of San*

12   *Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 851, 43 Cal. Rptr. 3d 771, 780

13   (2006), the court referred to a former client's "overwhelming" interest in

14   preserving the confidentiality of information imparted to counsel during a prior

15   representation.  That language is consistent with the court's statement in *Flatt* that

16   disqualification is "mandatory."  9 Cal. 4th at 283.  Both these statements were cited

17   in Genentech's opening brief; Howrey deals with neither of them.[2]

18   We show below that Mr. Bunsow should be presumed to have learned

19   confidential information relevant to this case while serving as trial counsel for

20   _____

[1] *Howrey* cites *In re Lee G.*, 1 Cal. App. 4th 1, 1 Cal. Rptr. 375 (1991), but that case
21   quotes the test from *Raley*. *In re Lee G.* involved a motion to disqualify county
counsel from simultaneously opposing a woman in dependency and conservator-
22   ship proceedings.  The court found no conflict existed.  1 Cal. App. 4th at 33.

23   [2] Howrey's citation to *UMG Recordings, Inc. v. MySpace, Inc.*, 526 F. Supp. 2d
1046, 1063 (C.D. Cal. 2007), does not support its appeal to balancing either.
24   Howrey describes the case as one in which an ethical screen was upheld as
sufficient to defeat disqualification notwithstanding a substantial relationship
25   between matters.  (Opp'n at 8 n.2.)  Howrey does not mention that the subsequent
client in the *UMG* case dropped the defense that created the conflict.  526 F. Supp.
26   2d at 1062.  Howrey conspicuously has not disavowed attacks on Cabilly's
description and enablement, which places this case firmly in the category the
27   *MySpace* court recognized as the default result: disqualification follows from the
showing of substantial relationship.  *Id.* at 1061.
28

3

1   Genentech in the *Chiron* case. Under the standards set forth above, it follows that
2   he and his firm are disqualified from opposing Genentech in this case.

3   **II.    Howrey Misdescribes The *Chiron* Litigation By Ignoring Genentech's**
    **Actual Trial Strategy, Which Mr. Bunsow Helped Conceive and**
4   **Implement**

5        Howrey asks the court to conclude that though Mr. Bunsow tried to a jury a
6   case in which the Cabilly description was asserted as part of his client's defense,
7   "it is highly unlikely that Bunsow would have any material confidential
8   information about Cabilly I or Cabilly II, or any other Genentech patent or
9   product . . . ." (Opp'n at 10.) One wonders what Howrey thinks Mr. Bunsow was
10  doing. Howrey's main argument in support of this remarkable claim is that the
11  Cabilly description was not "central" to the *Chiron* litigation because the Cabilly
12  description was used only to illustrate publicly known prior art and Cabilly's
13  validity was not at issue in that case. (Opp'n at 4, 10-14.) We show below that
14  each of these arguments is unsound.

15       **A.    Cabilly Was Introduced in *Chiron* As Affirmative Evidence of**
    **Proper Description and Enablement, Not Just As A Piece of Prior**
16  **Art**

17       In the *Chiron* litigation Genentech had to persuade the jury that Chiron
18  failed to describe and enable the full scope of its claimed invention. Genentech
19  could have presented its defense just by poking holes in Chiron's work. It could
20  have made a wholly negative presentation. It didn't.

21       As a matter of strategy, Genentech chose to establish a standard against
22  which the jury could assess Chiron's inadequate specification. (Decl. of Daralyn J.
23  Durie in Supp. of Defs.' Reply Memo filed herewith ("Durie Decl.") ¶1.) As the
24  senior patent lawyer on the case, Mr. Bunsow was fully involved in conceiving and
25  implementing this strategy. (*Id.* ¶2.) Mr. Bunsow himself explained the strategy to
26  the court in *Chiron*. In arguing that testimony he presented went "directly to the
27  written description and enablement issues in this case," Decl. of Aaron M. Nathan
28  in Supp. of Defs.' Mot. to Disqualify Counsel for Plaintiffs filed Apr. 27, 2010

4

("Nathan 4/27/10 Decl.") Ex. K at 206 (Tr. 443:12-13), Mr. Bunsow stated he planned "*a demonstration of how you enable the genus*, and it will be compared with what Mr. Ring did not do in this case." (*Id.* (Tr. 444:9-11) (emphasis added).)[3]  Mr. Bunsow's declaration, which states that Cabilly was used "simply as a single piece of evidence from the public record," Bunsow Decl. ¶10, is inconsistent with his description of Genentech's defense when he was presenting it.[4]

The Cabilly specification was a key piece of evidence used to establish this standard.  As with Dr. Ullrich's testimony, Genentech used Cabilly, and expert testimony about it from Dr. Deborah French, to show a description and enablement that satisfied the statutory requirements for patentability.  As a result, Dr. French did not only testify about the words that appear in the Cabilly specification, she also testified that Cabilly described *how to make* chimeric and hybrid antibodies. (Nathan 4/27/2010 Decl. Ex. J at 198 (Tr. at 383:18-22);[5] Durie Decl. ¶¶2-3.)

Howrey's brief at one point acknowledges that Genentech affirmatively

---

[3] As noted in Genentech's opening brief, Mr. Bunsow's witness at trial, Dr. Axel Ullrich, was a principal researcher in the work leading to the creation of Herceptin, the accused product in *Chiron* and part of Genentech's defense of Cabilly II here. Howrey does not and cannot deny the point.

[4] Indeed, the *Chiron* court made clear in a colloquy with Mr. Bunsow that it would not accept trial exhibits simply for the jury to read but only if Genentech planned to present testimony regarding the exhibit. (Nathan 4/27/2010 Decl. Ex. K at 204:11-16.)

[5] We note here that Howrey hired Professor David C. Hricik, who practiced in Texas and who teaches in Georgia, to opine on the California law at issue here. Genentech separately objects to his declaration as stating no more than a legal opinion; the declaration is a supplemental brief.  In addition, Professor Hricik's declaration founders upon the record.  Professor Hricik asserts there was no substantive testimony regarding Cabilly's description or enablement in the *Chiron* transcripts submitted with Genentech's motion.  (Hricik Decl. ¶20.)  The testimony cited in the text confirmed that Cabilly described how to make recombinant antibodies.  That is substantive testimony going to enablement.  Prof. Hricik is flatly wrong when he states that Dr. French was simply asked "what the Cabilly I patent said." (*Id.* ¶30.)

1  asserted Cabilly as illustrating proper description and enablement. (Opp'n at 9-
2  10.) And even Howrey's legal expert agrees that Cabilly was used as a standard of
3  adequate description against which Chiron's inadequacy could be shown. But it is
4  not true, as Professor Hricik asserts, Hricik Decl. ¶¶24-25, that Cabilly was
5  significant only because Chiron's patent mentioned it. Cabilly was significant
6  because Genentech's trial strategy made it significant. It is therefore equally
7  wrong to say, as Professor Hricik does, that the adequacy of Cabilly's description
8  "was irrelevant to any issue before the *Chiron* court." (Hricik Decl. ¶32.)
9  Genentech's defense strategy made it relevant. (Durie Decl. ¶3.) (Professor Hricik
10  goes on to assert that Mr. Bunsow had no reason to learn anything about Cabilly's
11  validity even though he helped present a defense that compared the Chiron patent
12  to the Cabilly disclosure. (Hricik Decl. ¶¶31-32.) He also considers a jury trial a
13  "narrow" scope of work. (*Id.* at ¶20.) Such are the joys of academe.)

14      For this reason, Howrey is wrong to say that in the *Chiron* case Genentech
15  used Cabilly as just a piece of prior art. (Opp'n at 12:13-16; 16:22-28; 21:13-16.)
16  But even if Howrey were right, its premise would not save it from disqualification
17  here. Prior art does not deploy itself. To use it skillfully a lawyer has to know how
18  arguments about the art relate to the client's own technology, if only to be prepared
19  to respond to challenges to the type of defense the *Chiron* trial team presented.

20      *Openwave Systems, Inc. v. 724 Solutions (US) Inc.*, No. C-09-3511 RS, 2010
21  WL 1687825 (N.D. Cal. Apr. 22, 2010), illustrates the point. The firm disqualified
22  in that case had opposed a foreign patent application as obvious in light of prior
23  art; the firm later defended a client accused of infringing a patent that had been
24  rejected in light of the U.S. counterpart to the application the firm had opposed.
25  The court noted that in theory "opposing a patent application does not *require* the
26  attorney to know *anything* about the client." 2010 WL 1687825, at *4. An
27  application might be opposed using only publicly available data.

28      The court disqualified the firm anyway, holding that the point of the

6

1   substantial relationship test is precisely to avoid "a subtle evaluation of the extent
2   to which [a lawyer] acquired relevant information in the first representation" and
3   instead to give effect to the reality that "because clients often will not know what is
4   or is not strictly relevant, it is likely that they frequently provide attorneys with far
5   more than the bare minimum the attorneys need to carry out the assignment." *Id.*
6   at *5. The court thus found it reasonable to assume the firm acquired material
7   confidential information even though in theory—and unlike in *Chiron*—the firm
8   could have discharged its assignment without learning anything about the client at
9   all.

10  **B.   Genentech's *Chiron* Trial Strategy Placed In Evidence And At
11        Issue Facts That Will Be In Evidence and At Issue Here**

12          Much of Howrey's brief argues that Chiron's claims did not make it
13  necessary for Genentech to assert facts showing that Cabilly properly described
14  and enabled the inventions it claims. From this premise Howrey concludes that
15  *Chiron* is not substantially related to this case because Cabilly's validity was not at
16  issue in *Chiron*. (Opp'n at 10-14; Hricik Decl. ¶¶31-32.)

17          Howrey's argument ignores what actually happened in the *Chiron* trial. It is
18  true that Chiron did not attack Cabilly's validity as such. It is true that Genentech
19  did not have to assert Cabilly as an example of description and enablement that
20  satisfied the patentability requirements Chiron failed. It is true Genentech did not
21  have to gather and introduce evidence supporting that claim. None of these points
22  is relevant, however, because Genentech made the strategic choice to do these
23  things. Facts relevant to Cabilly's validity were in evidence and at issue in *Chiron*.
24  Genentech put them there. (Durie Decl. ¶¶1-3.)

25          Substantial relationship analysis does not ignore what lawyers actually do.
26  The elements of claims and defenses are relevant to that analysis because they are
27  one source for ascertaining information a reasonable lawyer would acquire in her
28  work. But it would be perverse to ignore the defense Genentech actually presented

1  just because it was the result of a strategic choice rather than compelled by black-
2  letter law.  *Cf. Jessen,* 111 Cal. App. 4th at 712-13 ("subject matter" of
3  representation not limited to elements and defenses).

4      Howrey equally misses the mark when it contends that Mr. Bunsow's
5  extensive exposure to Herceptin, which Howrey does not deny and Mr. Bunsow
6  essentially admits, Bunsow Decl. ¶14, is irrelevant to this case.  (Indeed, it is
7  striking that Howrey's opposition essentially ignores the discovery element of
8  *Chiron* altogether, even though Mr. Bunsow defended depositions of Genentech's
9  General Counsel and Wendy Lee, a witness GSK itself has asserted is central to
10  this case.)  Howrey argues that Herceptin would have little relevance to this case
11  because Genentech could use other products to defend Cabilly.  (Opp'n at 12.)
12  That other products are relevant does not mean Herceptin is irrelevant and
13  Genentech is not required to tailor its trial strategy to work around Howrey's
14  conflict.  Genentech will use Herceptin in this case and Mr. Bunsow's admitted
15  knowledge of it further supports a substantial relationship between this case and
16  *Chiron.*

17      Finally, Howrey is mistaken to insist that this is an unusual patent conflicts
18  case because in most such cases the same patent (or a closely related one) is at
19  issue in both the prior and subsequent matters.  (Opp'n at 11.)  The Cabilly
20  description was at issue in *Chiron* because Genentech placed it at issue.  (Durie
21  Decl. ¶3.)  The claims of the Cabilly II patent at issue here are supported by that
22  description.  The only distinction between this case and the genre Howrey
23  references is that Genentech placed facts pertaining to one of its own patents at
24  issue in order to put on a persuasive defense rather than putting such facts at issue
25  to establish an infringement claim.  It is the facts that matter to substantial
26  relationship analysis, however, so that is truly a distinction without a difference.
27      For this reason, Howrey's efforts to distinguish the patent cases on which
28  Genentech relies are unpersuasive.  This case is not materially different from

8

1  *Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH,* No. C 08-04909 SI, 2010

2  WL 1136478, at *9 (N.D. Cal. Mar. 20, 2010), or *Elan Transdermal Ltd. v. Cygnus*

3  *Therapeutic Sys.,* 809 F. Supp. 1383 (N.D. Cal. 1992), because in *Chiron*

4  Genentech placed at issue the very same Cabilly description Howrey plans to

5  attack here.  The *Chiron* trial team, including Mr. Bunsow, is presumed to have

6  learned facts related to the defense those lawyers actually presented.[6]  (Durie Decl.

7  ¶4.)  And *Openwave* rightly rejected the argument, advanced by Howrey here, that

8  lawyers are presumed to know only facts strictly necessary to do their work.  2010

9  WL 1687825, at *5 & n.5.  That holding and the law supporting it refutes

10  Howrey's claim that Mr. Bunsow learned nothing material here because Genentech

11  did not have to defend the Cabilly description (even though Genentech, relying

12  upon Mr. Bunsow's good counsel, in fact effectively did).  (*See also* Durie Decl.

13  ¶4.)

14  **III.   Mr. Bunsow's Disqualification Extends to His Firm**

15  Genentech showed in its opening papers that the California Supreme Court

16  has stated that disqualification of one lawyer extends to an entire firm and that the

17  Court has twice affirmed disqualification of a firm or government office under this

18  rule.  In *Sanofi-Aventis Deutschland GMBH v. Genentech, Inc.,* Nos. C08-4909

19  and C 09-4919 (N.D. Cal.), Order Denying Plaintiff's Motion for Leave to File a

20  Motion for Reconsideration filed May 14, 2010, Judge Ilston recently affirmed that

21  the California Supreme Court's rulings on this point are clear and have not been

22  altered by the decision of the Court of Appeal in *Kirk v. First American Title*

23  *Insurance Co.,* 183 Cal. App. 4th 776, --- Cal. Rptr. 3d ---, 2010 WL 1346403

24  (Apr. 7, 2010).  (Declaration of Aaron M. Nathan in Supp. of Defs.' Reply Memo

25

26  [6] For that reason, this case *is* different from *Talecris Biotherapeutics, Inc. v. Baxter International, Inc.,* 491 F. Supp. 2d 510 (D. Del. 2007), in which the court denied

27  disqualification where a firm previously had asserted a patent listed on the patent in suit as invalidating prior art.  Here facts regarding the Cabilly description are at

28  issue in each case.

9

1  filed herewith ("Nathan Decl.") Ex. A.)

2  Howrey nevertheless argues that *Kirk* saves it from disqualification here.

3  (Opp'n at 19.)  Even if *Kirk* were binding, however, that argument is not correct.

4  Howrey fails two of the factors identified in *Kirk*.  First, Mr. Bunsow manages the

5  Howrey offices working on this case and is resident in the office in which one of

6  the associates on the case works.  *Cobra Systems* stressed the risk present when the

7  conflicted lawyer has supervisory authority over a lawyer working on the later

8  matter, 38 Cal. 4th at 850, and *Kirk* echoed this concern.  2010 WL 1346403, at

9  *21.

10  Second, Howrey acknowledges that it failed to screen Mr. Bunsow from this

11  matter when the conflict first arose, Opp'n at 18 n.9, which *Kirk* requires.  *Kirk*,

12  2010 WL1346403, at *19.  This failure raises serious questions about Howrey's

13  procedures, and thus about how reliable any screen Howrey erects could be.  Mr.

14  Bunsow's prior representation of Genentech in the *Chiron* matter should have been

15  in Howrey's conflicts database, identifying Mr. Bunsow as the responsible

16  attorney, particularly since the case was still pending when Mr. Bunsow joined

17  Howrey and Mr. Bunsow lists the *Chiron* matter on his website as one of his most

18  significant cases.

19  Moreover, Genentech is a former client not only of Mr. Bunsow but of the

20  Howrey firm.  (Declaration of Gary Loeb in Supp. of Defs.' Reply Memo

21  submitted herewith ¶1.)  Mr. Bunsow was Genentech's initial contact for the

22  matter.  *Id.*  Genentech should have been in Howrey's conflicts database for this

23  additional reason, and Mr. Bunsow should also have been listed as an attorney on

24  this second matter.  Before Howrey agreed to help GSK sue Genentech, a conflict

25  report should have been generated and it should have been circulated to Mr.

26  Bunsow for his review and approval.

27  In short, in light of these facts one would expect that *someone* at Howrey

28  would have taken some steps to connect the obvious dots.  But that did not happen

10

and Howrey offers no explanation for this failure.  Was a conflict report generated?  Did Genentech's name appear on it?  Did anyone review it?  Did it identify Mr. Bunsow?  Apparently the answer to at least one of these questions must be "no", because Mr. Bunsow states he did not learn that GSK retained Howrey until Genentech brought the conflict to Howrey's attention.  (Bunsow Decl. ¶5.)  Howrey provides no explanation for how that could be.  In light of this demonstrated failure of Howrey's internal processes, even if the California Supreme Court had endorsed screening this record would provide no reason to trust whatever measures Howrey has put in place to try to protect Genentech's rights (measures that are themselves not described in detail in any declaration).

Finally, Howrey's understandable appeal to Mr. Day's reputation notwithstanding, this is not a case like *Kirk*, in which a core group of lawyers had sunk years of experience litigating over 80 related matters at a client cost of over $5 million only to be threatened with disqualification based on a half-hour phone call with a lawyer who turned down the work he was offered. 2010 WL 1346403 at *1-2.  White & Case did the groundwork for the initial filing in this case and that firm remains available to GSK.

## IV. Mr. Bunsow's Firm Plans To Attack His Former Work And Thus Violate The Loyalty Mr. Bunsow Owes Genentech

Genentech showed in its moving papers that in some circumstances a lawyer may breach the duty of loyalty owed clients even after representation is terminated.  Attacking one's prior work is a paradigmatic example of such a violation.  *Knight v. Ferguson*, 149 Cal. App. 4th 1207, 1215, 57 Cal. Rptr. 3d 823, 829 (2007).  Howrey does not dispute this legal rule but denies that Mr. Bunsow is attacking his former work.[7]

Mr. Bunsow's declaration itself refutes this denial.  Mr. Bunsow attacks the

---

[7] Howrey argues that loyalty is most commonly at issue only in contemporaneous representations, Opp'n at 20-21, a point we acknowledged in our moving papers.

1  *Chiron* trial team's defense by attempting to minimize the testimony of Dr. French;

2  he says she simply pointed out things that were publicly known.  (Bunsow Decl.

3  ¶10.)  As noted above, however, the transcript belies this reading.  Dr. French's

4  testimony asserted the same substantive point that Mr. Bunsow acknowledges he

5  made when examining Dr. Ullrich about what an adequate disclosure would look

6  like.  (*Id.;* Durie Decl. ¶¶1-3.)  The testimony of both witnesses went to the

7  substance of description and enablement, yet the net result of Mr. Bunsow's

8  declaration is to depict a disjointed defense team presenting an uncoordinated and

9  uneven story: *his* witness asserted substantive points while others just read

10  documents.[8]  Genentech did not put on such an inconsistent defense, Durie Decl.

11  ¶4, and the duty of loyalty exists in part to avoid such arguments.

12        Howrey does not dispute it plans to assert that the Cabilly II patent is invalid

13  for failure to describe and enable production of recombinant antibodies.  To do so

14  it will have to refute testimony such as Dr. French's.  Denying that Dr. French ever

15  said any such thing is a logical first step.  Howrey proves Genentech's point when

16  it denigrates Genentech's *Chiron* trial testimony to avoid accusations of disloyalty.

17  ## V.   Howrey Wrongly Accuses Genentech of Seeking Tactical Advantage

18        Howrey finally asserts that Genentech's motion is a tactical ploy.  (Opp'n at

19  21-23.)  It notes that Genentech suggested in the Centocor case that *Chiron* expert

20  reports were not relevant to Centocor's claims.  That is true.  But Genentech

21  produced many of those reports (including the report of Dr. French), well before

22  Howrey even appeared in this case.  (Decl. of Daralyn J. Durie in Supp. of Defs.'

23  Mot. to Disqualify Counsel for Pls. filed Apr. 27. 2010 ("Durie 4/27/2010 Decl.")

24  ¶5; Garner Decl. Ex. D at p. 105, ¶4.)

---

25  [8] Mr. Bunsow states he was not responsible for Dr. French, implying he knew
26  nothing of her testimony.  (Bunsow Decl. ¶6.)  Such statements are the reason the
law does not require Genentech to prove what is or was in Mr. Bunsow's mind.
27  *Global Van Lines,* 144 Cal. App. 3d at 489.  At a minimum, it is reasonable to
suppose that in presenting a coordinated defense Mr. Bunsow acquired information
28  about the ways his colleagues and other witnesses would advance that defense.

1    Howrey also notes that in re-examination proceedings Genentech argued the

2   two Cabilly patents are distinct in various ways.  True again.  Genentech does not

3   assert here that the claims are identical, only that they share a common

4   specification, which discloses the inventions claimed in each patent and must

5   support each of them.  That is what matters to the inquiry here; no authority

6   supports the view that conflicts can arise only in cases involving the same literal

7   set of claims.  *Cf. Thorner v. Sony Computer Entm't Am., Inc.,* No. 09-1894 (GEB),

8   2009 WL 4041624, at *8 (D.N.J. Nov. 20, 2009) (ordering disqualification where

9   defendant's litigation counsel previously worked on game console technology

10   related to game controller patents in suit).

11    Howrey lastly misconstrues a conversation between counsel to accuse

12   Genentech of seeking to arrange a trade of conflict waivers.  Genentech has made

13   no such offer.  When Genentech's counsel, Daralyn J. Durie, raised the conflict

14   issue with Mr. Day, she pointed out that GSK itself has not been satisfied with the

15   creation of ethical walls when its own interests were at stake.  (Day Decl. ¶8.)  Her

16   point was there is no reason for Genentech to trust in ethical walls when GSK does

17   not and, further, that even if disqualification proceedings occur, as they have, those

18   proceedings reflect disputes between clients and not lawyers.  (Durie Decl. ¶5.)

19   Disqualification proceedings can become acrimonious, and lawyers on both sides

20   do well to remember that they act in a representative capacity and not personally

21   against each other.

22   **VI.    GSK Should Be Precluded From Using Howrey's Work Product**

23    Howrey argues that even if it is disqualified it should be allowed to hand

24   over its work product to successor counsel.  (Opp'n at 24-25.)  Genentech agrees

25   with Howrey that no California or Ninth Circuit authority binds the court on this

26   point, and the court therefore has discretion in dealing with disposition of work

27   product following disqualification.  Genentech notes two facts relevant to the

28   court's exercise of discretion.

13

DEFENDANTS GENENTECH, INC. AND CITY OF HOPE'S REPLY MEMO ISO
MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFFS / CASE NO.  CV-10-02764 MRP

1    First, Howrey was not the first firm to work up this case.  White & Case

2 presumably did so before GSK filed in Florida.  That work is free from conflicts

3 and GSK is free to use it regardless of the court's decision here.

4    Second, as soon as Genentech raised the issue GSK should have known

5 exactly what risks it ran by turning a blind eye to Howrey's conflict.  GSK is not

6 an unwary client stricken by circumstance; it is playing the odds.[9]  If the conflicts

7 rules and the cases construing them are to have any teeth, some measures are

8 needed to combat the tendency of firms simply to roll the dice on conflicts if the

9 stakes are high enough.  On these facts, the order Genentech seeks would send an

10 appropriate message without causing undue harm to anyone.

## CONCLUSION

12    For the foregoing reasons, Genentech's motion to disqualify the Howrey

13 firm should be granted and the court should enter an order precluding use of

14 Howrey's work sufficient to protect Genentech from further incursions on its

15 rights.

16 Dated:  May 25, 2010                    DURIE TANGRI LLP

19                          By:    _____/s/ Daralyn J. Durie_____
                                        Daralyn J. Durie

21                              Attorneys for Defendants and Counterclaim
                                 Plaintiffs GENENTECH, INC. and CITY
22                              OF HOPE

---

[9] Genentech notes in this regard that it has agreed to every request Howrey has made of it in connection with this motion.  It has extended time, provided advance copies of its brief and declarations, agreed that those could be shared with GSK and, most recently, given Howrey a full set of *Chiron* trial transcripts even though Howrey could have obtained those on its own.

14

1

*Of Counsel*

2

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

3   KENNETH GALLO
2001 K Street, N.W.

4   Washington, DC  20006-1047
Telephone:  (202) 223-7300

5   Facsimile:  (202) 223-7420

6   kgallo@paulweiss.com

7   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
JOHN E. NATHAN

8   CATHERINE NYARADY

9   KRIPA RAMAN
1285 Avenue of the Americas

10   New York, NY 10019-6064
Telephone:  (212) 373-3000

11   Facsimile:  (212) 757-3990
jnathan@paulweiss.com

12   cnyarady@paulweiss.com

13   kraman@paulweiss.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS GENENTECH, INC. AND CITY OF HOPE'S REPLY MEMO ISO
MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFFS / CASE NO.  CV-10-02764 MRP

## CERTIFICATE OF SERVICE

I certify that counsel of record is being served on May 25, 2010 with a copy of this document via the Court's CM/ECF system.

| | |
|---|---|
| Robert M. Galvin, Esq. | galvinr@howrey.com |
| Lloyd R. Day, Jr., Esq. | dayl@howrey.com |
| Jackie N. Nakamura, Esq. | nakamuraj@howrey.com |
| Martha K. Gooding | goodingm@howrey.com |
| Richard J. Burdge, Jr. | burdger@howrey.com |
| Scott B. Garner | garners@howrey.com |
| William C. Rooklidge | rooklidge@howrey.com |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 25, 2010, at San Francisco, California.

_/s/ Daralyn J. Durie_
Daralyn J. Durie

DEFENDANTS GENENTECH, INC. AND CITY OF HOPE'S REPLY MEMO ISO
MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFFS / CASE NO.  CV-10-02764 MRP