LINKS: 30, 39, 40

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GLAXO GROUP LIMITED, ET AL.,**<br><br>Plaintiff,<br>v.<br><br>**GENENTECH, INC., ET AL.,**<br><br>Defendant. | Case No. SA 10-CV-2764-MRP (FMOx)<br><br>**ORDER RE: MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFFS** |

## I.   INTRODUCTION

Plaintiffs Glaxo Group Limited and GlaxoSmithKline LLC (collectively, "GSK") seek declaratory judgment against Genentech, Inc. ("Genentech") and City of Hope (collectively, "Defendants") that U.S. Patent No. 6,331,415 (the "Cabilly II patent") is invalid, unenforceable and not infringed by the manufacture, use, sale, offer to sell, or importation of GSK's Arzerra™ antibody product. Complaint ¶1. Arzerra™ is a human monocolonal antibody that was approved by the U.S. Food and Drug Administration for the treatment of chronic lymphocytic leukemia patients. Complaint ¶27, 30; Answer ¶27, 30.

Genentech brought a motion to disqualify Howrey LLP ("Howrey") from this case because Henry Bunsow, a partner at Howrey, represented Genentech in a case that is alleged to be substantially related to this case.

## II. BACKGROUND

### A. Background of the Cabilly I and Cabilly II Patents

On April 3, 1983, Shmuel Cabilly et al. filed a patent application that issued on March 28, 1989 as U.S. Patent No. 4,816,567 (the "Cabilly I patent"). Complaint ¶13; Answer ¶13. The Cabilly I patent was assigned to Defendants. Complaint ¶13; Answer ¶13. At the time the Cabilly I patent issued, Defendants had a continuation application pending that later issued as the Cabilly II patent. Complaint ¶14; Answer ¶14.

Celltech Therapeutics Ltd. ("Celltech") is the owner of U.S. Patent No. 4,816,397 (the "Boss patent"), which has a priority date of March 25, 1983. Complaint ¶¶14-16; Answer ¶¶14-16. Defendants copied claims from the Boss patent, as is standard practice, to initiate an interference proceeding to determine whether the Boss patentees or the Cabilly patentees were entitled to priority for the inventions claimed in the respective patents. Complaint ¶14; Answer ¶14. In February 1991, the U.S. Patent and Trademark Office ("PTO") Board of Patent Appeals and Interferences ("the BPAI") declared a patent interference between the pending Cabilly II patent application and the Boss patent. Complaint ¶15; Answer ¶15. Seven years later, in August 1998, the BPAI found that the Boss patentees were entitled to priority over the Cabilly patentees. Complaint ¶15; Answer ¶15; *see Cabilly v. Boss*, 55 U.S.P.Q.2d 1238 (B.P.A.I. 1998).

In October 1998, Genentech filed an action under 35 U.S.C. §146 against Celltech to appeal the decision of the BPAI awarding priority to the Boss patent (the "Celltech case"); the parties later settled the case in March 2001 pursuant to a confidential settlement agreement. Complaint ¶16; Answer ¶16; *Genentech, Inc. v. Celltech Therapeutics Ltd.*, Case No. C98-3926 (N.D. Cal.). Pursuant to Celltech and Genentech's confidential settlement agreement, the court ordered the PTO to vacate its BPAI decision in the interference case, revoke the Boss patent, and grant the Cabilly II patent. *Genentech, Inc. v. Celltech Therapeutics, Ltd.*, 2001 U.S. Dist. LEXIS 3489, at *7-9 (N.D. Cal. Mar. 16, 2001). Although the PTO refused to act in response to the

1  court's order, subsequent proceedings resulted in the issuance of the Cabilly II patent on
2  December 18, 2001.

### B. Background of the Chiron Case

4  Chiron Corp. filed a patent infringement case against Genentech on June 7, 2000
5  ("the Chiron case"). *Chiron Corp. v. Genentech Inc.*, Case No. S-00-1252 (E.D. Cal.).
6  Notably, the Chiron case was filed less than two years after the BPAI decision in the
7  interference case between the Cabilly II patent application and the Boss patent. While
8  the Chiron case was pending, the Celltech case settled, resulting in the issuance of the
9  Cabilly II patent in 2001. As a continuation of the Cabilly I patent, the Cabilly II patent
10 shares a specification with the Cabilly I patent.

11 A jury trial in the Chiron case took place in August and September of 2002.
12 *Chiron Corp. v. Genentech Inc.*, Civ. S-00-1252 (E.D. Cal.). GSK and Genentech
13 dispute how the Cabilly I patent was used in the Chiron case. The Court understands that
14 the Cabilly I patent was used in the Chiron case as follows: In its summary judgment
15 order in the Chiron case, the court declared that the Cabilly I patent disclosed chimeric
16 antibodies in 1983. *Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1148, 1157 (E.D.
17 Cal. 2002). In the Chiron trial, Genentech used the Cabilly I patent to support its
18 argument that Chiron did not enable or adequately describe chimeric or hybrid antibodies
19 as claimed in the patent at issue ("the Ring patent"). Garner Decl., Ex. B. at 3-5; Nathan
20 Decl., Ex. F at 000138-39, Ex. G at 000178-79, Ex. H.

21 Bunsow was one of three lawyers of Keker & Van Nest LLP to appear and argue
22 at trial on behalf of Genentech in the Chiron case. *See* Nathan Decl., Ex. I at 000192.
23 Bunsow examined witnesses at trial to support the argument that Chiron did not
24 adequately enable or adequately describe chimeric or hybrid antibodies in the patent at
25 issue. *See* Nathan Decl., Ex. I at 000194. Prior to trial in the Chiron case, Bunsow
26 defended the depositions of Sean Johnston, Genentech's General Counsel, and Wendy
27 Lee who prosecuted the Cabilly II patent. Nathan Decl., Ex. C-D. Bunsow is now a
28 member of Howrey, the firm hired by GSK in this case. Howrey began to represent GSK

1  in this case on or about January 27, 2010, and later imposed an ethical screen on Bunsow
2  on or about March 11, 2010.  Day Decl. ¶3; O'Brien Decl. ¶5.

### III.    THE LEGAL STANDARD

Under Central District Local Rule 83-3.1.2, each attorney must comply with "the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto."  According to California Rule of Professional Conduct 3-310(E), absent a written waiver from the client or former client, an attorney must not "accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."  When a former client seeks to disqualify a former attorney from representing an adverse party, the former client need not prove actual possession of confidential information by the former attorney; instead, courts presume possession of confidential information if there is a "substantial relationship between the former and current representation."  *H. F. Ahmanson & Co. v. Salomon Bros.*, 229 Cal. App. 3d 1445, 1452 (1991) (citing *Global Van Lines v. Superior Court*, 144 Cal. App. 3d 483, 489 (1983)) (internal quotation omitted).  "The 'substantial relationship' test mediates between two interests that are in tension in such a context— the freedom of the subsequent client to counsel of choice, on the one hand, and the interest of the former client in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation, on the other."  *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994).

The substantial relationship test requires that the former client "demonstrate a '*substantial relationship*' between the subjects of the antecedent and current representations."  *Id.*  The subject of the representations includes information material to "the evaluation, prosecution, settlement or accomplishment of the litigation or transaction given its specific legal and factual issues."  *Jessen v. Hartford Casualty Ins. Co.*, 111 Cal. App. 4th 698, 713 (2003).  After a substantial relationship has been shown to exist,

"courts ask whether confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation." *Ahmanson*, 229 Cal. App. 3d at 1454. It is reasonable to expect that "the attorney may acquire confidential information about the client or the client's affairs which may not be directly related to the transaction or lawsuit at hand but which the attorney comes to know in providing the representation to the former client with respect to the previous lawsuit or transaction." *Jessen*, 111 Cal. App. 4th at 712. In presuming what confidential information material to the current dispute was likely disclosed to the attorney, "the court should not allow its imagination to run free with a view to hypothesizing conceivable but unlikely situations in which confidential information 'might' have been disclosed which would be relevant to the present suit." *Talecris Biotherapeutics, Inc. v. Baxter Int'l, Inc.*, 491 F. Supp. 2d 510, 515 (D. Del. 2007) (citation omitted).

When a substantial relationship between the former and current representation by an attorney is established, not only is the attorney disqualified, but the disqualification extends vicariously to the attorney's law firm. *Flatt*, 9 Cal. 4th at 283.

### IV.   DISCUSSION

The Court first considers whether there is a substantial relationship between the subjects of representation in the Chiron case and this case. The subject of the representation is understood to be broader than the witnesses Bunsow prepared and the documents that Bunsow introduced into evidence on behalf of Genentech in the Chiron case. The subject of Bunsow's representation includes the "the evaluation, prosecution, settlement or accomplishment of the litigation or transaction given its specific legal and factual issues." *Jessen*, 111 Cal. App. 4th at 713. The subject of evaluating and prosecuting the Chiron case included an understanding of the Cabilly I patent and how it related to Genentech's arguments on enablement and written description. To present testimony at trial regarding the Cabilly I patent, Bunsow had to be reasonably acquainted with the Cabilly I patent and its specification such that he could prepare witnesses,

1  defend their depositions, and examine them at trial on the subject of the Cabilly I patent.
2  GSK would have the Court believe that because Cabilly II was not at issue in the Chiron
3  case, there is no substantial relationship between the subjects of representation in the
4  Chiron case and this case.  However, because the specifications of the Cabilly I and
5  Cabilly II patents are the same and because the specification of a patent is the basis for
6  the claims, there is a relationship between the subjects of representation in these cases.
7  Furthermore, because the Celltech case involving the Cabilly II patent application was
8  being simultaneously litigated, a trial attorney employing the Cabilly I patent to attack the
9  validity of the Ring patent in the Chiron case could hardly have failed to be cognizant of
10 the strategy in the Celltech case.  Bunsow's representation of Genentech in the Chiron
11 case would necessarily have resulted in an evaluation of the Cabilly I in light of the
12 Cabilly II patent.  Therefore, the Court finds that there is a substantial relationship
13 between the subjects of representation in the Chiron case and this case.
14       Next, after evaluating the scope of the prior representation, courts inquire what
15 confidential information would have been imparted to an attorney given the scope of that
16 representation.  *See Ahmanson*, 229 Cal. App. 3d at 1454.  As stated, it is reasonable to
17 presume that Bunsow—a member of a three person trial team in the Chiron case with
18 important responsibilities such as defending the deposition of the Genentech General
19 Counsel and patent prosecutor of the Cabilly II patent—acquired confidential information
20 about Genentech's patent strategy surrounding the Cabilly I and Cabilly II patents.  Given
21 that the Cabilly I and Cabilly II patents shared a specification and Genentech was
22 simultaneously litigating the Celltech case, it would have certainly been important that
23 nothing in the Chiron case defense strategy impair Genentech's ability to enforce and
24 defend the Cabilly II patent.  To act as competent counsel to Genentech, Bunsow would
25 have to have acquired confidential information material to this case.  It could hardly have
26
27
28

1  been otherwise, especially considering the importance and value of the Cabilly I and
2  Cabilly II patents.[1]

3  GSK cites *Kirk v. First American Title Insurance Company* for the proposition
4  that the presumption of an imputed conflict can be rebutted by adequately screening a
5  lawyer from those at the firm representing the adverse party.  183 Cal. App. 4th 776
6  (2010).  However, GSK cannot rely on *Kirk* because it is not binding authority and
7  contradicts binding California Supreme Court law.  *See Flatt*, 9 Cal. 4th at 283 ("Where
8  the requisite substantial relationship between the subjects of the prior and the current
9  representations can be demonstrated . . . disqualification of the attorney's representation
10 of the second client is mandatory; indeed, the disqualification extends vicariously to the
11 entire firm.").  Even if the Court were to follow *Kirk*, GSK would not be able to rebut the
12 presumption of an imputed conflict because it did not adequately screen Bunsow from
13 this case.  *Kirk* states than an effective screen must "be timely imposed" and impose
14 "preventative measures to guarantee that information will not be conveyed."  *Id.* at 810.
15 Here, it is clear that Howrey did not impose the screen at the time the representation
16 began on or about January 27, 2010, but only imposed the screen at the time Genentech
17 raised the conflict to Howrey's attention on or about March 11, 2010.  Day Decl. ¶3;
18 O'Brien Decl. ¶5.  Howrey's screen does not meet the "timely imposed" requirement
19 under *Kirk* because the screen was imposed weeks after the representation began.

20 Genentech objects to Howrey's declaration from Professor David C. Hricik on the
21 grounds that his opinions state legal conclusions and lack foundation.  This Court

---

[1] "[T]he court should not allow its imagination to run free with a view to hypothesizing conceivable but unlikely situations in which confidential information 'might' have been disclosed which would be relevant to the present suit."  *Talecris Biotherapeutics, Inc. v. Baxter Int'l, Inc.*, 491 F. Supp. 2d at 515 (citation omitted).  Because this Court has deep experience with the Cabilly II patent and its history as a continuation of the Cabilly I patent, this Court is well situated to make a presumption about what confidential information would have been necessary to execute the trial strategy in the Chiron case.  This Court has handled two notable cases involving the Cabilly II patent.  In *MedImmune*, a licensee of the Cabilly II patent brought a declaratory relief action seeking to have the Cabilly II patent declared infringed, invalid, and unenforceable.  *See MedImmune, Inc. v. Genentech, Inc.*, No. 2:03-cv-02567 (C.D. Cal. filed Apr. 11, 2003).  The case settled after years of litigation that included extensive discovery, claim construction, an appeal, and a decision by the United States Supreme Court.  In *Centocor*, another licensee of the Cabilly II patent filed a declaratory relief action raising the same claim construction, validity, and enforceability issues. *See Centocor Inc. v. Genentech, Inc.*, No. 2:08-cv-03573 (C.D. Cal. filed May 30, 2008).

-7-

declines to address Genentech's objection.  Because Prof. Hricik did not discuss the Celltech case and its relationship to the Cabilly I and Cabilly II patents and the Chiron case, the Court places little weight on Prof. Hricik's declaration.  Prof. Hricik is obviously unaware of the extraordinary history of the Cabilly I and II patents.

Because the Court finds a substantial relationship between Bunsow's former representation of Genentech and Howrey's current representation of GSK, the Court **GRANTS** Genentech's motion to disqualify Howrey from the representation of GSK in this case.  Although the Court finds Genentech's arguments that the use of evidence on Herceptin in the Chiron case and this case result in a substantial relationship, the Court declines to address Herceptin given its finding of a substantial relationship for the reasons set forth above.   The Court further declines to address Genentech's arguments on the violation of the duty of loyalty although in this case it is undisputed that Howrey intends to make a full scale attack on the Cabilly II patent on multiple grounds including written description and enablement.

### V.     CONCLUSION

The Court **GRANTS** Genentech's motion to disqualify Howrey from this case. The Court **ORDERS** Howrey to refrain from handing over its work product to successor counsel until further order of this Court.  The Court **ORDERS** Genentech to prepare a proposed Statement of Uncontroverted Facts and Conclusions of Law and proposed Order in light of the foregoing and submit it to the Court by Friday, June 25, 2010.

**IT IS SO ORDERED.**

DATED: June 15, 2010

_____
Hon. Mariana R. Pfaelzer
United States District Judge