MAYER BROWN LLP
Elizabeth Mann (SBN 106524)
emann@mayerbrown.com
350 S. Grand Avenue, 25th Fl.
Los Angeles, CA 90071-1503
Telephone:  (213) 229-9500
Facsimile:   (213) 625-0248

MAYER BROWN LLP
Lisa M. Ferri
lferri@mayerbrown.com
Brian W. Nolan
bnolan@mayerbrown.com
1675 Broadway
New York, NY 10019-5820
Telephone:  (212) 506-2500
Facsimile:   (212) 262 1910
(*Admitted Pro Hac Vice*)

Attorneys for Plaintiffs and Counter-Defendants
GLAXO GROUP LIMITED and
GLAXOSMITHKLINE LLC

*[Counsel continued on next page]*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| GLAXO GROUP LIMITED and GLAXOSMITHKLINE LLC,<br><br>                Plaintiffs,<br><br>      v.<br><br>GENENTECH, INC. and CITY OF HOPE<br><br>                Defendants. | Case No. CV-10-02764 MRP (FMOx)<br><br>**REVISED JOINT<br>RULE 26(f) REPORT**<br><br>Judge:  Hon. Mariana R. Pfaelzer<br>Ctrm:   12 |
| GENENTECH, INC., and CITY OF HOPE,<br><br>                Counter-Plaintiffs,<br><br>      v.<br><br>GLAXO GROUP LIMITED and GLAXOSMITHKLINE LLC<br><br>                Counter-Defendants | |

28835010

JOINT RULE 26(f) REPORT; CASE NO. CV-10-02764 MRP (FMOx)

DURIE TANGRI LLP
Daralyn J. Durie (SBN 169825)
ddurie@durietangri.com
Mark A. Lemley (SBN 155830)
mlemley@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 362-6666
Facsimile: (415) 236-6300

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Kenneth A. Gallo
kgallo@paulweiss.com
2001 K. Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420

Attorneys for Defendants and Counterclaim-Plaintiffs
GENENTECH, INC. and CITY OF HOPE

Pursuant to Rule 26 of the Federal Rules of Civil Procedure and Rule 26-1of the Local Rules, Plaintiffs Glaxo Group Limited and GlaxoSmithKline, Inc. (collectively "GSK") and Defendants Genentech, Inc. ("Genentech") and City of Hope submit the following Rule 26(f) Report:

## A. Factual Background of the Case

### 1. GSK's Position

GSK, through a development agreement with Genmab, has developed, tested and commercialized a highly selective anti-CD20 fully human antibody—ofatumumab. The FDA approved ofatumumab, commercialized under the name Arzerra™, as the first anti-CD20 antibody approved for the treatment of patients whose chronic lymphocytic leukemia ("CLL") is refactory to previous therapies. After the FDA approved ofatumumab for the treatment of CLL, the FDA approved Genentech's rituximab (Rituxan®), a chimeric anti-CD20 antibody for the treatment of CLL. The FDA had approved Rituxan® for the treatment of non-hodgkins lymphoma ("NHL"), another B-cell malignancy, in 1997. Arzerra™ is currently in clinical trials for the treatment of NHL.

GSK filed this action seeking a declaration that U.S. Patent No. 6,331,415 (the "Cabilly II patent") is invalid, unenforceable, and/or not infringed by the manufacture, use, sale, offer for sale and/or importation of GSK's ofatumumab (Arzerra™) antibody product. Genentech and the City of Hope answered the Complaint and asserted Counterclaims for infringement of the Cabilly II patent.

The Cabilly II patent, which relates to recombinant techniques for manufacturing immunoglobulins, traces its history back to 1983—the early days of monoclonal antibodies. The Cabilly II patent has been through several interferences and re-examinations. The United States Patent & Trademark Office ("USPTO") rejected the Genentech's priority arguments during the interference between the Cabilly II patent and a patent to Boss *et al*. Through a private settlement between Genentech and the owner of the Boss *et al*. patent, Genentech

was able to obtain a reversal of the USPTO's priority decision and caused the Cabilly II patent to issue. The private settlement agreement caused the claims of the Cabilly II patent to have an effective patent life of 29 years.[1]

### 2.  Genentech & City of Hope's Position

Genentech and City of Hope seek a ruling that GSK's sale of and commercial activities relating to Arzerra™ infringe the Cabilly II patent. The Court is already extremely familiar with the legal proceedings that have surrounded the prosecution and enforcement of the Cabilly II patent. The Cabilly II patent was duly and legally issued by the USPTO in 2001 after an interference with the Boss patent and a subsequent action under 35 U.S.C. § 146, which settled with an acknowledgment of Cabilly's priority of invention. In accordance with the patent statute, the term of the Cabilly II patent is 17 years from its issue date.

Genentech and City of Hope seek damages not less than a reasonable royalty for, and injunctive relief to stop, GSK's infringement of the Cabilly II patent.

### B.  FRCP 26(f) Issues

> 1. *What changes should be made in the timing, form, or requirements for disclosures under Rule 26(a), including a statement as to when disclosures under Rule 26(a)(1) were made or will be made.*

By agreement, the parties will exchange the disclosures on or before October 27, 2010.

> 2. *The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused upon particular issues*

#### a.  Discovery Needed

GSK intends to seek discovery directed to, among other things:

---

[1] The Boss *et al*. patent issued in 1989. Therefore, the public was foreclosed from using the inventions claim in the Boss *et al*. patent since that time. The Boss *et al*. patent would have expired on 2006. Since the parties did not enter into the private agreement until 2001, the Cabilly II patent did not issue until 2001. Cabilly II expires in 2018—17 years from 2001.

- Facts concerning the conception and/or reduction of practice of the alleged invention disclosed or claimed in each of the asserted claims of the Cabilly II patent;
- Facts concerning the research, development, design, manufacture, and/or use of any product or process embodying any alleged invention disclosed or claimed in the Cabilly II patent;
- The preparation, filing and prosecution of the Cabilly II patent, U.S. Patent No. 4,816,567 (the "Cabilly I patent"), and any related applications/foreign counterparts, including any abandoned related applications or current related applications that are still under examination;
- Information relating to prior art references known by any person associated with the preparation, filing or prosecution of the Cabilly I patent, the Cabilly II patent, and any abandoned related applications or current related applications that are still under examination.
- The interference proceedings between Senior Party Boss *et al.* and Junior Party Cabilly *et al.*;
- The reexamination proceedings concerning the Cabilly II patent;
- Any settlement of any litigation or interference proceeding relating to the Cabilly II patent, including, but not limited to, settlements with Medimmune, Centocor, and Celltech/UCB;
- Genentech and/or City of Hope's communications with Celltech/UCB concerning the Cabilly II patent, Cabilly I patent, or any patent that claims priority back to the application that issued as the Cabilly I patent;
- Genentech and/or City of Hope's licensing activity concerning the Cabilly II patent, the Cabilly I patent, or any patent that claims priority back to the application that issued as the Cabilly I patent;
- The state of the art as of April 8, 1983 concerning any alleged invention disclosed or claimed in the Cabilly II patent;

- The person of ordinary skill in the art as of April 8, 1983 concerning any alleged invention disclosed or claimed in the Cabilly II patent;
- Genentech and City of Hope's contentions regarding infringement;
- Genentech and City of Hope's contentions regarding validity;
- Genentech and City of Hope's contentions regarding enforceability;
- Genentech and City of Hope's contentions concerning damages;
- Financial and marketing information relating to any alleged damages to Genentech and City of Hope;
- The opinions of an experts to be relied upon by Genentech and City of Hope; and
- Any additional discovery that may become necessary as to the parties' facts and arguments are developed.

Genentech and City of Hope intend to seek discovery directed to, among other things:

- The development of and process for making ofatumumab (Arzerra™);
- The development, making, use, and maintenance of any host cells and vectors relating to the making of ofatumumab;
- GSK's activities relating to ofatumumab (Arzerra™) for the purpose of proving that GSK has infringed, directly and indirectly, the Cabilly II patent;
- The activities and involvement of other parties, and their relationship with GSK, with respect to the development, manufacture, importation, sale, offer for sale, and use of ofatumumab (Arzerra™), and any host cells and vectors used to make ofatumumab, to determine the nature and extent of their infringement of the Cabilly II patent, including Lonza Biologics plc, Lonza Biologics Inc., and Genmab A/S;
- GSK's relationship and communications with other parties relating to the Cabilly II patent;
- GSK's contentions regarding non-infringement of the Cabilly II patent;

4

- GSK's contentions regarding invalidity of the Cabilly II patent;
- GSK's contentions regarding unenforceability of the Cabilly II patent because of prosecution laches or any other reason;
- GSK's contentions that Genentech's claim of infringement is barred by certain rights or covenants not to sue;
- GSK's knowledge and consideration of the Cabilly II patent;
- GSK's prayer for an award of costs and fees;
- Information relevant to damages and other available remedies.

      b.    Scheduling

| Event | Revised Agreed-Upon Date |
| --- | --- |
| *Markman* Hearing | February 14, 2011 |
| Defendants' Reply *Markman* Brief | February 7, 2011 |
| Plaintiffs' Responsive *Markman* Brief | January 31, 2011 |
| Defendants' Opening *Markman* Brief | January 7, 2011 |
| Exchange of proposed constructions of claim terms to be construed and identification of extrinsic evidence to be relied upon | December 23, 2010 |
| Exchange of identification of claim terms to be construed | December 17, 2010 |
| Plaintiffs' Invalidity Contentions | December 13, 2010 |
| Defendants' Infringement Contentions | October 27, 2010 |
| Amendment of Pleadings and Joinder of New Parties | February 18, 2011 |

      c.    Format of the *Markman* Hearing

The parties propose that the claim construction hearing shall consist of attorney argument. To the extent that a party intends to rely upon extrinsic evidence, including expert testimony, that party will identify the extrinsic evidence at the time the party provides the construction for the identified claim terms. If a party intends to rely upon expert testimony, either live or by written submission, that party will provide a statement that complies with Fed. R. Civ. P. 26. at the

5

time of providing the party's construction for the identified terms. The party submitting the expert evidence shall make the expert available for deposition at a mutually agreeable time and place and with sufficient time before Defendants' opening *Markman* brief. Any deposition taken shall not exceed seven hours and shall not count against the party's allotment of deposition hours discussed below.

    3.    *Any issues relating to disclosure or discovery of electronically stored information, including the form or forms in which it should be produced.*

The parties propose to produce information in TIFF format, accompanied by a load file with searchable text, with suitable TIFF image format specifications to be exchanged between the parties by October 15, 2010 and with subsequent modifications to such specifications reasonably allowed. The parties will negotiate the nature and extent of metadata to be included in the load files. The parties agree to preserve metadata, however, and if a party can demonstrate its need for a particular item of additional metadata, the parties will discuss and attempt to reach a resolution at that time.

Further, the parties agree that it would be unreasonably burdensome or otherwise inappropriate to preserve, search, collect, or produce certain forms of electronically stored information, and therefore have no obligation to do so. These include: voicemail messages; random access memory; instant messages and chats; information from Blackberry or other handheld devices that is not duplicative of data stored on e-mail servers; dynamic fields of databases or log files that are not stored or retained in the usual course of business; optical, tape, or other sequential backup systems; and information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and disposition of computer equipment.

    4.    *Any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a*

> *procedure to assert these claims after production—whether to ask the court to include their agreement in an order.*

The parties propose handling inadvertently produced documents under terms specified in a protective order that the parties will propose for entry by the Court. The parties further agree that privileged and work product materials relating to litigation proceedings are not required to be logged. The parties intend to continue to meet and confer regarding the scope of privilege logs.

> 5. *What changes should be made in limitations on discovery imposed under these rules or by local rules, and what other limitations should be imposed*

The parties agree that each side shall be limited to a total of 100 hours of time on the record conducting fact depositions (i.e., GSK has 100 hours and Defendants have 100 hours total deposition time between them). The parties further agree that the deposition of a fact witness will not exceed 7 hours of time on the record. The parties further agree that the above 100 hour time limit is exclusive of expert depositions. In addition, each side shall have the opportunity to depose any fact witness that the other party plans to call to testify at trial (if the witness has not been previously deposed in the case), provided the side seeking the deposition has time remaining in its 100-hour allotment; the party shall be allowed to take the deposition even if the close of discovery has passed. With respect to expert depositions, a party shall be allowed to depose each expert that submits an opening or rebuttal expert report for a total of 7 hours of time on the record. If an expert submits both an opening and rebuttal report, a party shall be allowed to depose that expert for a total of 11 hours of time on the record. This expert deposition time shall not include deposition time for any expert that submits evidence to support claim construction. The opposing party to the claim construction position shall be entitled to depose that expert for up to 7 hours of time on the record.

/ / /

/ / /

The parties agree that each side shall be limited to a total of 40 interrogatories (*i.e.*, GSK has 40 interrogatories and Defendants have 40 interrogatories total between them).

     6.    *Any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).*

At the present time, the parties are aware of the following two orders that should be entered by the Court under Rule 26(c) or under Rule 16(b) and (c):

    **a.**    *a protective order under Rule 26(c) regarding handling of sensitive technical or commercial discovery materials produced by all parties in this case.*

    **b.**    Genentech and City of Hope have requested that GSK agree to an extension of the date by which Genentech and City of Hope must serve their infringement contentions and GSK must serve its responding invalidity contentions. The extension will allow Genentech and City of Hope time to discover whether to join any additional parties and to sharpen the issues relating to the appropriate claims of the Cabilly II patent to assert against GSK and any additional parties. GSK has informed Genentech that it is amenable to such an extension provided that Genentech and City of Hope serve their infringement contentions at least 2 months before the parties exchange the identification of claim terms to be construed as outlined above in Section 2.c. Procedure and Format of Markman Hearing. GSK also requested that the Markman hearing be extended to six months to follow the parties' respective exchange of infringement and validity contentions so that the parties will know what claims are at issue and will need to be construed. Genentech has informed GSK that it agrees to this schedule. GSK would provide its invalidity contentions at least two weeks before the

8

1  parties exchange the identification of claim terms to be
2  construed as outlined above in Section 2.c. Procedure and
3  Format of Markman Hearing. The parties request that the Court
4  issue such an order extending the date for the parties to
5  exchange contentions.
6 The parties reserve the right to bring any other matters to the Court's attention
7 should any issues arise as the facts and arguments are developed.

**C.  Local Rule 26-1 Issues.**

1.  *Complexity of the case*

The parties agree at this time this case does not necessitate the use of the manual for Complex Litigation.

2.  *Motion Schedule*

The parties agree that amendments to the pleadings, including the addition of parties to this action, may be made in accordance with the proposed schedule set forth above.

3.  *Settlement*

The parties have not engaged in formal settlement discussions. The parties believe that some fact discovery will be required before any settlement discussions are likely to be successful. The parties believe that Settlement Procedure 3 is more likely to meet the parties' needs than the other forms of settlement contemplated by Local Rule 16-15.

4.  *Trial Estimate*

GSK believes that the case can be tried in 8-10 court days with the time being divided equally between GSK and Defendants (*i.e.*, 50% of time to GSK and 50% of the time to the Defendants).

5.  *Additional Parties*

GSK does not foresee the addition of any new parties.

Genentech and City of Hope foresee the possible addition of new parties,

including Lonza Biologics Inc., Lonza Biologics plc, and/or Genmab A/S.

6. *Expert Witnesses*

The parties believe that expert witness disclosures should be made in accordance with the parties' proposed schedule set forth above and Fed. R. Civ. P. 26 except as provided herein. The parties agree that drafts of any expert report, declaration, or disclosure, including drafts of reports required under Fed. R. Civ. P. 26(a)(2), shall not be discoverable regardless of the form of the draft. The parties further agree that communications of any form relating to this action between (a) a party to these actions or the parties' attorneys and (b) those parties' expert(s) shall not be discoverable, except to the extent the communications: (i) relate to compensation for the expert(s)' study or testimony; or (ii) identify facts, data, or assumptions that the parties' attorneys provided and that the expert(s) relied upon in forming any opinions expressed or to be expressed.

Dated: October 11, 2010

MAYER BROWN LLP
ELIZABETH E. MANN

By: s/Elizabeth E. Mann
Elizabeth E. Mann
Attorneys for Plaintiffs and Counter-Defendants
GLAXO GROUP LIMITED and
GLAXOSMITHKLINE LLC

Dated: October 11, 2010

DURIE TANGRI LLP
DARALYN J. DURIE
MARK A. LEMLEY

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Kenneth A. Gallo

By: s/Daralyn J. Durie
Daralyn J. Durie
Attorneys for Defendants and Counterclaim-Plaintiffs GENENTECH, INC. and CITY OF HOPE